529 So.2d 173 (1988)
Rosalie ROTWEIN
v.
Sandra HOLMAN a Minor, Individually and as a Minor by Next Friends and Father and Mother W. Henry Holman, Jr. and Mrs. W. Henry Holman, Jr.; W. Henry Holman, Jr., and Wife, Mrs. W. Henry Holman, Jr.
No. 57801.
Supreme Court of Mississippi.
July 20, 1988.
Rehearing Denied August 17, 1988.
*174 John E. Gregg, Raymond, for appellant.
Natie P. Caraway, Wise, Carter, Child & Caraway, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and ROBERTSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Rosalie Rotwein has appealed from a judgment of the Circuit Court, First Judicial District, Hinds County, Mississippi, in favor of Sandra Holman and her parents, Mr. and Mrs. W. Henry Holman, Jr., denying recovery to Mrs. Rotwein for personal injuries alleged to have been sustained in an automobile accident. Appellant assigns two (2) errors in the trial below.

Facts
On August 3, 1984, 18-year-old appellee Sandra Holman, accompanied by her younger sister, Janie, was driving her mother's new 1984 Jaguar from the parking lot of Fondren Station Post Office on Fondren Place in Jackson. As Sandra exited the parking lot and entered the street, she looked to the left and right and slowed down, but did not come to a complete stop. At the moment she began to turn into the street, a cup of coffee in the car spilled, and Sandra took her eyes off the road to reach for the cup. When she looked back up, she was on the rear of a 1982 Mercury Marquis. Sandra applied the brakes hard, but the Jaguar collided with the Mercury, causing $199.29 in damages to the rear of the Mercury and $543.20 in damage to the front of the Jaguar.
The driver of the Mercury, appellant Rosalie Rotwein, 65 years old, immediately got out of her car to check on Sandra who was crying and upset. Sandra's sister Janie went to get their mother, appellee Mrs. W. Henry Holman, who was shopping at a clothes store across the street. Mrs. Holman came to the scene and asked appellant if she was all right. Appellant replied, "I'm fine." or "I'm all right." The police were not summoned. Appellant and Mrs. Holman exchanged names and addresses, and everyone left the scene.
Appellant immediately went to her husband's office a short distance away. She told him that she had been in an accident and that she had "a bump about as big as a goose egg" on the left side of her head. After she rested, appellant and her husband took their car to a dealer for repairs; they went in separate cars, and appellant drove one of them.

Law

I.

THE JURY VERDICT IN FAVOR OF THE APPELLEES WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE, AND SAID VERDICT WAS ARBITRARY, CAPRICIOUS, OUTRAGEOUS AND SHOCKING TO THE CONSCIENCE, AND THE RESULT OF BIAS AND PREJUDICE.
During voir dire of the jury, the attorney for appellees admitted negligence on the part of Sandra Holman. After the parties rested, the lower court granted a peremptory *175 instruction in favor of appellees, Mr. and Mrs. W. Henry Holman, Jr., and granted a peremptory instruction on liability against Sandra Holman and in favor of the appellant. The peremptory instruction appears in the following language:
The Court instructs the jury that Sandra Hyde Holman was negligent as a matter of law and the remaining issue for you to determine is the amount of damages, if any, sustained by Mrs. Rosalie Rotwein as a result of this accident.
The above instruction did not appear in the record along with the other instructions, and was brought before this Court on a diminution of the record. Appellant argues that "there is absolutely no way of knowing whether or not [it] reached the jury." However, the copy of the instruction is certified by the circuit clerk as true and correct. Certification imports absolute authority, and the certified record is the sole evidence of the proceedings below. In Brown v. Sutton, 158 Miss. 78, 121 So. 835 (1929), the Court said:
So long as it is a true transcript of what the record in the hands of the clerk actually shows, it cannot be impeached in the appellate court; and it cannot be, by us, varied or altered or amended ... nor by statements in the briefs of counsel... .
158 Miss. at 84-85, 121 So. at 837.
We are of the opinion that there is no merit in such argument of appellant, and we now proceed to a discussion of injuries and damages alleged by the appellant and to determine whether or not the jury verdict for appellee, Sandra Holman, is against the overwhelming weight of the evidence.
During the evening after the accident, appellant complained of a loud roaring sound in her head. This sound persisted, and approximately three weeks after the accident, on August 23, 1984, appellant consulted her physician of sixteen (16) years, Dr. James Gordon, who performed a hearing test on appellant and discovered that she had a slight hearing loss in the high frequency range. He diagnosed the roaring sound as tinnitus[1] and prescribed several medications.
On November 1, 1984, appellant was examined by Dr. Allan Freeland, an orthopedic surgeon. He diagnosed "mild degenerative arthritis which may have been aggravated by the injury" in the August 3 accident. He referred appellant to Dr. Windsor Morrison for treatment of the tinnitus.
On January 30, 1985, appellant went to New Orleans to be examined by two doctors with special expertise in the area of tinnitus. Dr. Harold Cox of the Ochsner Clinic diagnosed tinnitus in appellant and recommended that she cease taking certain medications. He told appellant's husband, "Otherwise, I have no idea why she is suffering from tinnitus." Harold Tabb of the Tulane Medical Center diagnosed allergic rhinitis, tinnitus, and slight hearing loss, and recommended allergy testing, a CT scan and certain lab tests.
On February 7, 1985, appellant consulted Dr. William Nicholas, a general practitioner, who diagnosed her condition as vertigo/dizziness. That same day, appellant saw Dr. Herbert Langford, an internist, who prescribed calcium blockers for the tinnitus. Appellant was referred to those doctors by Dr. Freeland.
Appellant next consulted Dr. Dennis Roberts, a dentist, on May 19, 1985. He ground down appellant's teeth in order to improve her bite, but the tinnitus remained unabated.
Finally, appellant consulted Dr. William Johnson, a psychologist, on May 21, 1985, to determine whether biofeedback could be used to help appellant cope with the roaring sound caused by the tinnitus. However, the tinnitus symptoms became worse while biofeedback was being used. Dr. Johnson administered several psychological tests, and he concluded that appellant's tinnitus symptoms were real.
Appellant testified as to her version of the accident, the resulting tinnitus, the various *176 forms of medical relief sought, and adverse affects on her lifestyle and quality of living. Appellant's husband testified that appellant is "just not the same sweet personality that she was" before the accident and attributed the change to her medical problems. Drs. Gordon, Freeland, Johnson, Tabb and Cox testified for appellant and described her medical treatment as set forth above. Appellant introduced medical bills totalling $3,223.00.[2]
The cross-examination of appellant and of her physicians Drs. Gordon and Freeland indicated that appellant had several preexisting conditions. She had been treated regularly by Dr. Gordon for allergies and a thyroid condition. In 1980, appellant had sustained a compression fracture of the vertebra at Level T-6. Appellant testified that she "couldn't bear the pain" and her husband took her to the hospital for X-rays which revealed the fracture. Appellant's husband did not recall this. Other maladies suffered by appellant prior to the accident included sciatica pains, Achilles tendon pain, osteopenia, osteoporosis, arthritis, and a twisted foot. In April, 1984, three months before the accident, appellant got an ear irritation from swimming and developed a noise in her ear. In the month immediately preceding the accident, appellant complained to Dr. Gordon of ringing in the ears, and the diagnosis was tinnitus.
Appellant principally relies upon Howard Bros. of Phenix City, Inc. v. Penley, 492 So.2d 965 (Miss. 1986), as authority supporting the first assigned error. In Howard Bros., Penley, who was a department store customer, was held hostage by a mentally-disturbed customer who had obtained a loaded pistol from a sales clerk. The customer fired the pistol near Penley's ear, and, as a result, Penley sustained permanent tinnitus. Penley had no previous tinnitus, and it was obvious that the tinnitus was caused by the gunshot. Howard Bros. is distinguished from the case at bar where there is preexisting tinnitus and the evidence is substantial that appellant's tinnitus was not caused or aggravated by the collision.
Credibility of witnesses is for the jury. Burnham v. Tabb, 508 So.2d 1072 (Miss. 1987). In Jackson v. Griffin, 390 So.2d 287 (Miss. 1980), the Court said:
Conflicts in the evidence are to be resolved by the jury, and before a reviewing court can interfere with the verdict, testimony must so strongly preponderate that the court can safely say it was overwhelmingly in favor of the appellant.
390 So.2d at 289.
The issue of damages was thoroughly presented to the jury in the court's instructions. After a careful review of the evidence, we are unable to say that the jury did not have substantial evidence to support its verdict for the appellees. The jury obviously determined that appellant's tinnitus and other ills were not the result of the accident, and, in our opinion, the jury's verdict was not against the overwhelming weight of the evidence. Therefore, assigned Error I is rejected.

II.

THE MOTION FOR DIRECTED VERDICT ON BEHALF OF APPELLEES, W. HENRY HOLMAN, JR. AND MRS. W. HENRY HOLMAN, JR., SHOULD HAVE BEEN DENIED.
The record is uncontradicated that Mrs. Holman expressly requested her daughter, Sandra, to fetch the Jaguar, which was in the post office parking lot. Sandra testified: "My mother asked me to go get the car so I did what my mother told me to." Appellant contends that such testimony constitutes Sandra as an agent of her parents. Appellant cites Woods v. Nichols, 416 So.2d 659 (Miss. 1982), for purposes of distinction rather than support for her position. She states in her brief that in Woods, no agency existed, as the alleged agent was not about the business of the alleged principal.
In Smith v. Dauber, 155 Miss. 694, 125 So. 102 (1929), a woman was driving her husband's car, at his request, to pick him *177 up at work. Along the way, an accident occurred due to the woman's negligence, and the injured party sought to hold the husband liable on an agency theory. The Court said:
[T]he owner of an automobile being driven by another who is not his servant, or who was not driving the automobile for the owner's benefit at his express or implied request, is not liable for injuries negligently inflicted by such others in driving the automobile unless he [the owner] was negligent in permitting such other to drive the automobile.
155 Miss. at 699, 125 So. at 103.[3]
This Court concluded that the request of the husband that his wife pick him up was insufficient to create an agency relationship since it was the wife's usual custom to provide her husband's transportation home.
Further, in view of our disposition of Assignment I, the assigned Error II is rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS, P.J., and ROBERTSON, PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., not participating.
NOTES
[1] At trial, an expert described tinnitus as "a ringing of the ears and it's a subjective symptom ... . [t]here is no way you can objectively diagnose tinnitus." All of the experts who testified emphasized that tinnitus is a wholly subjective ailment and that it cannot be detected or verified through medical diagnostic procedures such as X-rays, scans, etc.
[2] The damage to appellant's Mercury automobile was $199.29, which was paid by Mr. Holman following the collision.
[3] See Marter v. Scott, 514 So.2d 1240 (Miss. 1987).