Affirmed.
 ON PETITION FOR REHEARING
 I. PROCEDURAL HISTORY
MST, Inc. (MST) filed the complaint to begin this suit on December 20, 1988. In the complaint, MST alleged that Mississippi Chemical Corporation (MCC), operating through a corporation which was allegedly its subsidiary, Committee for North Central Mississippi Paper Mill, Inc. (the Committee), breached a contract and used the Committee to perpetrate a common law fraud upon it. On January 20, 1989, MCC filed a Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted, For Improper Venue, and for Summary Judgment, with supporting affidavits. Also on that date, MCC filed a Motion to Stay Discovery. On January 27, 1989, MST filed a Motion for Additional Time to Respond to Defendant's Motion to Dismiss asking for an additional five days, until February 3, 1989. An order regarding briefing and hearing on the motion to dismiss was also entered on January 27, 1989, which set February 3, 1989, as the due date for the MST's response to MCC's motion; February 8, 1989, as the due date for MCC's rebuttal; and February 10, 1989, as the date for a hearing on MCC's motion.
MCC filed a memorandum in support of their motion on February 9, 1989, as well as supplemental and additional affidavits. MCC re-noticed the hearing on February 10, 1989, for February 16, 1989. On February 14, MCC filed the affidavit of Walter R. Bridgforth, stating as the reason for the late offer that the parties had previously agreed not to contact Bridgforth prior to February 10. No further matter was entered into the record on behalf of MST, and the motion was heard before the circuit court on February 16, 1989. The circuit court entered summary judgment in favor of MCC on March 14, 1989, from which judgment MST appealed to this Court. This Court issued a per curium affirmance on April 1, 1992. MST argues in its petition for rehearing that the Court erred in its prior ruling. In its original brief, MST assigned the following as error:
 WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING THE DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT?
 WHETHER MISSISSIPPI CHEMICAL CORPORATION CAUSED THE FORMATION OF AN UNDERCAPITALIZED *Page 301 
CORPORATION LACKING AN ACTUAL BUSINESS PURPOSE, THAT IS, A "CORPORATE SHELL," NAMED THE COMMITTEE FOR NORTH MISSISSIPPI PAPERMILL, INC., WITH THE DESIGN AND INTENT TO PERPETRATE A FRAUD ON MST, INC. AND TO TAKE FROM MST, INC., WITHOUT JUST COMPENSATION ITS WORK PRODUCT, IDEAS, PLANS AND SCHEMES TO BUILD A NEWSPRINT PAPER MILL IN NORTH MISSISSIPPI.
 WHETHER OR NOT THE TRIAL COURT ERRED IN ITS HOLDING THAT CALHOUN COUNTY CIRCUIT COURT WAS AN IMPROPER VENUE FOR THIS CAUSE OF ACTION AND IN FACT THAT YAZOO COUNTY, MISSISSIPPI, WOULD BE THE PROPER VENUE.
In its petition for rehearing, MST now asserts as additional errors in the lower court:
 WHETHER THE TRIAL COURT IMPROPERLY REFUSED TO ALLOW PLAINTIFF/APPELLANT MST, INC. ADEQUATE OPPORTUNITY TO CONDUCT DISCOVERY AS TO THE ALLEGATIONS RAISED IN THE COMPLAINT?
 WHETHER THE TRIAL COURT IMPROPERLY REFUSED TO ALLOW MST, INC. TO OFFER ORAL TESTIMONY TO REBUT MISSISSIPPI CHEMICAL'S "ELEVENTH HOUR" AFFIDAVIT THAT WAS PRESENTED IN SUPPORT OF MISSISSIPPI CHEMICAL'S MOTION FOR SUMMARY JUDGMENT?
 II. STATEMENT OF THE FACTS
MST and the Committee entered into a contract on February 18, 1980. MST agreed to sell the Committee all of its assets, ideas and plans for a paper mill. However, no payment from the Committee was provided for until the occurrence of two events. The first event, which would trigger a payment of $81,500 to MST, involved the execution of a partnership agreement between the Committee or its successors or associates and another entity or entities for the purpose of erecting a paper mill. The second payment of $81,500 would then become due when a construction contract for the erection of a paper mill was entered into. The contract further stated that the contract itself was no admission that MST had any assets and recited that the agreement was offered only in compromise and settlement and in order that pulpwood farmer interest be of one mind and fully cooperative. MST was further given the right to unilaterally terminate the contract if no payment was received before April 1, 1980.
On September 18, 1980, MST and the Committee entered into another agreement. It amended the terms of the original agreement to provide that MST could not exercise the option to terminate the contract before April 1, 1981, and recited payment of $10,000 to MST in consideration of the amendment.
As mentioned, MCC supported its motion for summary judgment with a number of affidavits and exhibits. The first exhibit was the certificate of incorporation for the Committee, dated August 8, 1979, showing that the initial directors of the Committee were Owen Cooper, G.A. Triggs and Robert A. Filgo and that the incorporators of the corporation were Walter R. Bridgforth and Hugh M. Love.
The affidavit of Tom C. Parry stated that he was President and Chief Executive Officer of MCC and that he had replaced Owen Cooper in those capacities upon Cooper's retirement from MCC in 1973. He stated that Cooper remained a director of the corporation but had no authority to incur obligations on behalf of MCC. He further stated that MCC was never a party to any negotiations with MST and that the only connection with MST's efforts to build a paper mill was MCC's extension of a $25,000 loan to the Committee in 1980. MCC made the loan at Cooper's request and to further MCC's tradition of helping farmers. Parry stated that MCC was asked by Cooper and Donald Branch of the New Orleans Bank for Cooperatives to invest in a paper mill project in 1981, but MCC declined to *Page 302 
participate. According to Parry, that ended MCC's involvement with the paper mill project until 1985, when Branch contacted MCC regarding a new proposal to build a paper mill. At no time, Parry stated, did MCC ever receive anything from MST.
Donald Branch also filed an affidavit. He supported Parry's contentions, stating that as Secretary and then Vice-President of the New Orleans Bank for Cooperatives (later the Jackson Bank for Cooperatives) he was involved in two totally separate attempts to build a paper mill in Mississippi. The first effort lasted from the mid 1970's until 1982 and involved Fred Beckett and his corporation, MST, and Owen Cooper and his corporation, the Committee. To his knowledge, MCC was never involved in any of the negotiations involving that effort. The effort failed because his bank could only lend money for the project if a cooperative was involved and the efforts to form a cooperative involving the timber farmers were unsuccessful. These efforts included Cooper's attempts to organize the cooperative through the corporation he formed, the Committee. In all of his contacts with Cooper, he never heard or was aware of Cooper representing that the Committee was in any way affiliated with MCC or that he was acting on behalf of MCC.
According to Branch, he began the second effort to build the paper mill by contacting Cooper about the prospects. Cooper again became interested in the project and the two acted together to persuade the management of MCC to take on the project.
Gene A. Triggs, Vice-President of MCC, stated in his affidavit that he knew that Owen Cooper participated in many business and civic activities unconnected with his association with MCC. According to Triggs, Cooper was instrumental in forming a number of corporations, including MCC, First Mississippi Corporation, Southern Farm Bureau Life Insurance Company, Southern Farm Bureau Casualty Insurance Company and Mississippi Hospital and Medical Services (Blue Cross/Blue Shield). He was involved with Cooper in the unsuccessful efforts of the Committee to build a paper mill. According to Triggs, no partnership was ever formed, which would have been the condition precedent to the first payment under the contract between MST and the Committee. The general plan the Committee had was to form a partnership between the timber farmers, newspaper publishers and a mill operator to build the mill. The failure of the timber farmers to raise enough capital was the primary reason for the failure of the effort. Triggs attached several news articles and a proposal for the plan, apparently to show that diligent efforts were made to form the partnership.
Walter Arnold stated in his affidavit that he was Vice-President of research and engineering at MCC, as well as an officer of Newsprint South, Inc., the corporation which built the paper mill and which is a wholly owned subsidiary of MCC. He stated that the applications to the Bureau of Pollution Control from Newsprint South were totally the work of Newsprint South. Further, although MCC did receive some preliminary engineering studies from Cooper and Branch in 1981 and 1982, MCC had its own study done in 1985 and 1986 at a cost of $564,000.
Rosalyn Glascoe, corporate secretary for MCC, stated in her affidavit that she had examined the corporate minutes of MCC in search of references to the Committee and that she found only three references. The first was at a meeting of the executive committee on May 27, 1980, when Cooper presented a request for a $25,000 loan to the Committee. The loan was requested out of MCC's traditional role of helping farmers help themselves by forming cooperatives. The loan was approved and would be repaid if the venture was successful. The reference on March 24, 1981, stated merely that Cooper had presented information concerning the paper mill project which he was dominantly involved in developing. At a meeting on December 22, 1981, Cooper attempted to secure the financial involvement of MCC in the project to the tune of $10,000,000 of the projected cost of $283,976,000 to build the mill. MCC did not act on the request at that time. *Page 303 
A supplemental affidavit filed by Gene Triggs stated that the Committee was not a sham corporation. He stated that the Committee had a separate bank account and that it raised money from several different sources, including MCC, First Mississippi Corp., the Department of Economic Development and several Chambers of Commerce in North Mississippi. He further stated that the Committee filed tax returns, had offices in Yazoo City and Grenada and held regular meetings of the officers and shareholders. Through what he called a companion corporation, North Mississippi Paper Mill (AAL), the Committee applied for permits to construct a paper mill in Batesville.
In a joint affidavit, Dwight Wylie, Chief of the Air Division and David Cain, Chief of the Industrial Waste Water Branch of the Mississippi Bureau of Pollution Control stated that Newsprint South applied for permits with the Bureau in 1986 and that the applications did not rely on previous applications by the Committee or North Mississippi Paper Mill (AAL). According to them, the information required in support of the application changed during the period between the applications.
Finally, MCC presented the affidavit of Walter Bridgforth in support of its motion. Bridgforth was the attorney working with Cooper in his efforts. He stated that Cooper approached him in 1979 concerning the formation of the Committee, making it clear that he was acting in his individual capacity. Cooper promoted the mill project for several years, raising money from various sources and trying to organize the timber farmers. The Committee formed six member cooperatives comprised of timber farmers in various counties and a federated cooperative in its attempt to gain the necessary farmer support. However, the effort eventually failed due to the unsuccessful efforts to organize the farmers or obtain adequate financial support from other sources. According to Bridgforth, the amendment to the contract and the $10,000 payment were made in order to provide needed eye care to Beckett. The only material transferred from MST to the Committee, according to Bridgforth, was a copy of the bylaws and minutes of MST, lists of landowners, correspondence and letters of intent from them, graphs from the Cooperative Extension Service and a form of marketing agreement. Bridgforth had no knowledge of anything ever being delivered to MCC.
At the hearing on the motion for summary judgment, MST attempted to offer the live testimony of Dr. Beckett. MCC strenuously objected on the basis that live testimony was improper at a hearing on a motion for summary judgment and that the issue was to be decided based upon the record up to the date of the hearing. MCC referred to a deposition Dr. Beckett had apparently given, stating that any information opposing the summary judgment should have been in the deposition. This deposition does not appear in the record. Reference was also made at the hearing to an affidavit given by Dr. Beckett; however, this does not appear in the record either, apparently having been excluded as not timely filed (It does, however, appear as an exhibit to MST's brief). The Court allowed MST to proffer the substance of Dr. Beckett's testimony, which MST did, stating that:
 It seems to me that if MST through Dr. Beckett dealt with Owen Cooper with the understanding that they were dealing with MCC, Mississippi Chemical Corporation, and were led to believe that what was being done was the creation of whatever was required to facilitate the implementation of the paper mill in Grenada, then, I think it's relevant, and I think it's pertinent, and I think it creates a factual discussion, at least, or a set of facts that are contrary to each other, that allow Mr. Beckett and MST the right to take their suit forward. . . .
MST's counsel further stated that Dr. Beckett met with Owen Cooper at MCC's offices in Yazoo City as part of the basis of the claim. *Page 304 
III. DISCUSSION: THE TRIAL COURT DID NOT ERR AS A MATTER OF LAW IN GRANTING THE DEFENDANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment
 shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
This Court conducts a de novo review of the lower court's decision on summary judgment. Short v. Columbus Rubber andGasket Co., 535 So.2d 61, 63 (Miss. 1988).
Once a party files a motion for summary judgment, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Mississippi Rules of Civil Procedure.
MST included as an attachment to its brief a copy of an affidavit by Frederick E. Beckett, President of MST, dated February 2, 1989, and purportedly presented to the trial court with MST's brief in opposition to summary judgment. However, neither this affidavit nor the brief appear in the record provided to this Court. We do not consider matter from outside the record on appeal. Rotwein v. Holman, 529 So.2d 173, 175 (Miss. 1988). However, for the sake of argument, this Court considers the effect of the affidavit on MCC's motion.
Beckett's affidavit contains nothing which contradicts the averments in MCC's affidavits. He states that he expended much time on the project which inured to MCC's benefit when it eventually went forward with the project. Beckett further recounts meetings where Triggs stated that MCC "would like to have this project" and where Owen Cooper made similar statements. Through a proffer of testimony at the hearing on summary judgment Beckett indicated that preliminary discussions were held at MCC in Cooper's office there. However, these averments do nothing to support MST's claims of breach of contract and fraud, and nothing to show why the Committee should be considered the alter ego of MCC.
Since MST presented no sworn evidence in opposition to the motion for summary judgment, the trial court correctly took as true the allegations in the affidavits provided by MCC, as shown by its findings of fact and conclusions of law. Examining these affidavits, one can only come to the conclusion that MCC was not liable under either of MST's theories. They clearly show that: (1) the Committee was duly incorporated and operated by Owens as an entity separate from MCC; and (2) that there were two separate attempts to build a paper mill in North Mississippi, only the second involving MCC. These conclusions are fatal to both of MST's theories, and show that the lower court had no choice but to grant the motion for summary judgment.
A word on the two additional assignments of error in MST's petition for rehearing is appropriate. The purpose of a petition for rehearing is not to allow counsel to add assignments of error which, for whatever reason, were not included in the appellant's original brief to this court. Judicial economy dictates that we consider only those assignments of error set forth in the original brief. The purpose of the petition for rehearing is to allow the parties to point out "the points of law or fact which in the opinion of the petitioner this Court has overlooked or misapprehended. . . ." Miss.Sup.Ct.Rules 40. We cannot misapprehend or overlook that which is not presented for our review.
MST complains that it was not afforded an adequate opportunity for discovery before the hearing on the motion to dismiss or for summary judgment. It complains that it did not have adequate time to respond to Bridgforth's affidavit filed by MCC only two days before the hearing. *Page 305 
Although our standard of review is de novo, we do not sit to determine matters which were not presented to the lower court. The Mississippi Rules of Civil Procedure provide an avenue of relief for the party who is unable to adequately oppose a motion for summary judgment.
 Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.
Miss.R.Civ.Pro. 56(f).
MST did not seek the haven of this rule and is therefore precluded from now complaining that it did not have adequate discovery to allow it to respond to MCC's motion.
MST also complains that the lower court would not allow the live testimony of Dr. Beckett at the hearing on the motion for summary judgment. Again, this argument was not set forth as an issue in the appellant's brief nor argued and is therefore waived. Miss.Sup.Ct.R., R. 28(a)(3), Weems v. American Sec. Ins.Co., 486 So.2d 1222, 1227 (Miss. 1986).
Even were we to consider the issue, its vitality is quite dubious. MST's citation to Crain v. Cleveland Lodge 1532,560 So.2d 142 (Miss. 1990) avails it little. True, we did hold there that the trial court, in certain situations, should allow oral testimony at the hearing on a motion for summary judgment and that failure to do so may amount to an abuse of discretion. Id.
at 145. However, the scenario presented in Crain was totally inapposite to the present case. Crain involved a party who wasunable to secure affidavits to support his claim because the subjects involved were associated with the defendant. The Court found that an attempt to procure affidavits from the subjects would have been a "futile endeavor." Id. Thus, although the Court expressly noted that whether a court should allow live testimony at a summary judgment hearing was a matter of discretion, 560 So.2d at 144, it found that the lower court had abused its discretion under the facts presented.
This case presents almost the reverse situation. Beckett, as MST's President, was certainly available to provide an affidavit on behalf of MST at any time. MST's counsel stated at oral argument before this Court that oral testimony was necessary to rebut statements in the Bridgforth affidavit concerning Cooper. However, similar statements were made in the affidavits already filed, which MST needed to rebut by some sworn testimony. The failure to respond to the prior affidavits seems entirely attributable to MST's failure to diligently prosecute the case. Moreover, Dr. Beckett's testimony as proffered by MST's attorney, appears no different than that already before the Court through Dr. Beckett's affidavit.
This Court has considered the other issues set forth in the appellant's brief and, finding them without merit, affirm the lower court's judgment in its entirety.
PETITION FOR REHEARING DENIED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and BANKS, J., concur.
McRAE, J., dissents with separate written opinion, joined by DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
ROBERTS, J., not participating according to Supreme Court Internal Rules.