601 So.2d 866 (1992)
Jettie McCARY
v.
H.W. (Billy) CAPERTON.
No. 07-CA-59490.
Supreme Court of Mississippi.
June 10, 1992.
Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, for appellant.
J. Niles McNeel, McNeel & Ballard, Louisville, for appellee.
Before HAWKINS, P.J., and PITTMAN and McRAE, JJ.
McRAE, Justice, for the Court:
Plaintiff Jettie A. McCary filed suit in the Circuit Court of Winston County, Mississippi, on January 4, 1988, against defendant *867 H.W. (Billy) Caperton. McCary's suit stemmed from an automobile accident which occurred in December, 1987. The court directed a verdict in favor of the plaintiff on the issue of negligence, but the issue of damages went to the jury. After deliberation, the jury found for the defendant. On appeal, McCary raises the following issues:
I. Did the trial court err in admitting evidence which violated the collateral source rule?
II. Did the trial court erroneously instruct the jury after giving a peremptory instruction and a conflicting instruction to allow the jury to find for the defendant?
III. Was the verdict of the jury against the overwhelming weight of the law and the evidence?
We reverse and remand for a new trial on the issue of damages.

FACTS
The automobile accident occurred in a parking lot in Louisville, Mississippi, on December 30, 1987. McCary was apparently stationary when Caperton struck her.
The next day, December 31, Dr. A.P. Soriano saw McCary and found that she had not sustained any external injuries, but indicated that she had minimal spasm in her neck and lower back.
Two days after the collision, on January 1, 1988, McCary called Dr. Soriano, complaining of severe pain in the neck and lower back and of general soreness. Dr. Soriano admitted McCary to the hospital, placed her on bed rest, and took some X-rays. The X-rays showed that McCary was osteoarthritic, for which the doctor prescribed Demerol and Robaxisal, a muscle relaxer. He also placed McCary in intermittent low back traction.
According to Dr. Soriano's final diagnosis, McCary suffered from cervical strain, lumbosacral strain, and severe osteoarthritis of the spine. He testified at trial that in his opinion, the condition was caused in part by the December 30th accident.[1] McCary was discharged on January 4, 1988.
Dr. Soriano saw McCary on January 26, 1988, for a follow-up visit during which she still complained of pain in her lower neck and back. He saw her again on February 9 and on March 1. During the March 1 visit, McCary requested permission to go back to work. She had been off from work since the time of the accident.
Dr. Soriano testified that he did not believe that McCary would have any permanent injury to her back and that her osteoarthritis was due to aging. Dr. Soriano noted that he last saw McCary the day before the trial.
On cross-examination, the defense brought out testimony that McCary had called Dr. Soriano from her attorney's office on January 1, requesting to be put in the hospital. Dr. Soriano also acknowledged on cross-examination that the objective tests he performed while McCary was in the hospital revealed only that her muscles were a little "tight."
According to the nurses' notes, taken from the date of McCary's admission on January 1 through her discharge on January 10, McCary had checked in for cervical pain, a sore throat, and a cold. The notes also reflected that McCary had visitors; she voiced no complaints of pain or discomfort; she frequently watched television; and had a good appetite.
McCary testified that although she had minor sinus problems upon admission, her primary reason for hospitalization was due to the injury she suffered in the automobile accident. She stated that Dr. Soriano had placed her in back brace which she still wears when she works. An employee of Georgia Pacific, McCary stated that she grossed $411.00 per week at the time of the accident. She lost ten weeks from work.
McCary acknowledged on cross-examination that she had filed her lawsuit on January 4, 1988, the first day that the courthouse was open after she went into the hospital. Over objection, she further admitted *868 that, although she had insurance through her employer which would cover her hospital bill, she had never filed a claim. McCary further conceded that she had received sick pay in the amount of $140.00 per week during the time she was off from work.
McCary's final bill from Winston County Community Hospital was for $2,464.63. As of the day of trial, she owed Dr. Soriano a total of $464.00.
The defendant introduced a bill of particulars which referred to the case of Jettie McCary v. Brunt-Ward Chevrolet-Olds, Inc., Docket No. 11,417, a previous action which McCary had filed following a 1979 automobile accident. In the previous suit, McCary had claimed $100,000 for neck and back pain and $50,000 for future medical expense. The case was settled. In the trial of the instant action, McCary stated that she no longer suffered from the 1979 accident.

LAW

I. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE WHICH VIOLATED THE COLLATERAL SOURCE RULE?
The trial transcript reveals the following exchange:
BY MR. MCNEEL: Your honor, may we approach the bench a moment?
BY THE COURT: Yes, sir
BY THE COURT: Let the record reflect that counsel for the Defendant has apprised the Court of the next question that he wishes to ask. The Court rules that it's a question that he may ask based on subject matter being brought up during direct examination.
Q: Ms. McCary, Mr. Weir asked you about your hospital bill and he asked you if it's been paid and you said it has not?
A: Yes, sir.
Q: In fact though you have insurance with your employer that would cover that hospital bill or a portion of it. Is that not correct?
BY MR. WEIR: We object to that question.
BY THE COURT: Your objection is noted and overruled.
A: Yes, sir.
Q: But you have chosen not to file for that insurance and instead to tell the jury that it's not paid. Is that not correct?
* * * * * *
A: Well, the bill is not paid.
Q: Now, you said that you were off work for ten weeks; that you lost four hundred and one dollars a week; four thousand and ten dollars is what you were out?
A: Yes, sir.
Q: Now, that's misleading the Jury because you actually got sick pay, didn't you?
* * * * * *
A: It was around that.
* * * * * *
Q: You got sick pay for those ten weeks, didn't you?
A: Yes, sir.
Q: How much did you get each week?
BY MR. WEIR: May we have a continuing objection?
BY THE COURT: Your objection is noted and overruled.
A: A hundred and forty a week.
According to Central Bank of Mississippi v. Butler, 517 So.2d 507 (Miss. 1987):
Mississippi has adopted and follows the "collateral source rule." Under this rule, a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor.
Id. at 511-12 (citations omitted) (cited with approval in Eaton v. Gilliland, 537 So.2d 405, 408 (Miss. 1989)).
Caperton contends that the evidence was not offered to the jury for the purpose of reducing the amount of the award that the jury would return, if any, but was instead offered for the express purpose of showing that McCary was engaged in a scam; that *869 she was trying to collect for injuries she never suffered.
We have never recognized such an exception to the collateral source rule, and we refrain from doing so here. It is true that the rule as stated in Butler does not squarely fit this case. McCary did not "receive" compensation from an independent source since she never filed an insurance claim. However, Ward v. Mitchell, 216 Miss. 379, 62 So.2d 388 (1953), states that the collateral source rule applies not only where a claimant has already received compensation from an independent source but also where the potential for such compensation exists. We hold that the trial court committed reversible error in allowing the defendant to introduce evidence of McCary's insurance coverage or benefits of sick leave.

II. DID THE TRIAL COURT ERRONEOUSLY INSTRUCT THE JURY?
The trial court granted Jury Instruction No. P-1(A) which stated:
The court instructs the Jury that the accident between the Caperton Vehicle and the McCary Vehicle occurred as a result of the negligence of the defendant Caperton.
Jury Instruction No. C-4 addressed the form of the jury's verdict:
Your verdict ... may be in either one of the following forms:
If you find for the Plaintiff, "We, the Jury, find for the Plaintiff, ____, and assess ____ damages at $ ____."
If you find for the Defendant, "We, the Jury, find for the Defendant."
After considering the evidence, the jury returned the following verdict: "We, the Jury, find for the Defendant."
An obvious conflict exists between Instruction No. P-1(A) and Instruction No. C-4. Instruction No. P-1(A) directs a verdict for the plaintiff on the issue of negligence; Instruction No. C-4 allows the jury to return a general verdict for the defendant. In Moak v. Black, 230 Miss. 337, 92 So.2d 845, 851 (1957), we held that it is error for a court to grant instructions which are likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence. The contradiction between Instruction No. P-1(A) and Instruction No. C-4 creates a clear potential for confusion. By permitting the jury to return a general verdict in favor of the defendant, Instruction C-4 effectively cancelled the peremptory language contained in Instruction P-1(A). In Griffin v. Fletcher, 362 So.2d 594, 596 (Miss. 1978), we dealt with a similar situation:
An examination of the instructions in the present case indicates that, even though a peremptory instruction on liability was given in favor of the appellant, the issue of liability also was presented to the jury in other instructions... . The effect of those instructions was to countermand the peremptory instruction and the jury was obviously confused. In this situation, we are of the opinion that the motion for a new trial should have been sustained and that the case should be reversed and remanded for a new trial.
In the case sub judice, we cannot even be sure that the jury's verdict addressed the issue of damages. Given the trial court's instruction concerning the form of a verdict for the defendant, the jury could possibly have decided that McCary suffered damages but that Caperton was not liable for them.
By granting an instruction which the jury could have interpreted as allowing them to ignore the peremptory instruction on liability, the trial court reversibly erred.
We also find that the trial court erred by requiring the plaintiff to insert the words "if any" into Instruction No. P-5. As given, the instruction reads:
The court instructs the jury that if you find for the Plaitniff [sic] in assessing her damages you may take into consideration all evidence in reference to loss [sic] wages and income Plaintiff has suffered as a result of injuries if any sustained in the accident; and all evidence in reference to pain and suffering if any the Plaintiff has suffered or is reasonably likely to suffer in the future as a *870 result of injuries sustained in the accident; and all evidence in reference to doctor bills, hospital bills, drug bills, and medical expenses Plaintiff has incurred as a result of injuries if any sustained in the accident; provided you further believe from a preponderance of the evidence in this case that all said injuries and damages if any are the sole, direct, and proximate result of negligence on the part of Defendant in this case.
(emphasis added).
We do not hold that the "if any" language would be improper in all cases. Here, however, the record contains unrefuted evidence that McCary was injured in the December 30, 1988 accident and that the injury resulted in loss. Under these circumstances, the task of the jury was to determine the extent of McCary's injuries and loss, not whether any existed. Cf. Burrell v. Goss, 245 Miss. 420, 424, 146 So.2d 78, 79 (1962) ("according to all of the evidence, the plaintiff sustained at least some injury"). Since the plaintiff introduced undisputed evidence of damages, the trial court erred by modifying Instruction P-5 so as to allow the jury to find a total absence of injury or loss.
McCary's remaining arguments relating to jury instructions lack merit.

III. WAS THE VERDICT OF THE JURY AGAINST THE OVERWHELMING WEIGHT OF THE LAW AND THE EVIDENCE?
The trial court's peremptory instruction on the issue of liability is justified by the evidence. Regarding damages, McCary's physician testified that she suffered from cervical and lumbosacral strain. He further testified that in his opinion, McCary's condition was caused by the December 30, 1988, automobile accident. The defense offered no substantial evidence to refute Dr. Soriano's statements of fact and opinion. In Griffin, 362 So.2d at 595 we held:
The evidence is undisputed that appellant sustained some injury in the collision and that she suffered damage as a result. Therefore, she was entitled to compensation for same, if the peremptory instruction on liability was properly granted.
A verdict is deemed to be against the overwhelming weight of the evidence where, "given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found." Wells Fargo Armored Service Corp. v. Turner, 543 So.2d 154, 157 (Miss. 1989). In light of the trial court's peremptory instruction on liability and the unrefuted evidence of injury and damages, we hold that the jury's verdict for the defendant was against the overwhelming weight of the evidence.

CONCLUSION
The trial court erred in allowing the defense to introduce evidence of McCary's insurance coverage in violation of the collateral source rule. The court also erred by granting a form-of-verdict instruction which effectively cancelled its peremptory instruction on the issue of liability. Since the plaintiff's proof of injury and damages was unrefuted, the trial court further erred by requiring the plaintiff to insert the words "if any" in its proposed instruction on the question of injury and damages. Lastly, the unrefuted proof of injury and damages, along with the court's peremptory instruction on the issue of liability, renders the jury's verdict against the overwhelming weight of the evidence.
REVERSED AND REMANDED FOR A NEW TRIAL ON THE AMOUNT OF DAMAGES.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, SULLIVAN and PITTMAN, JJ., concur.
BANKS, J., concurs in part by separate written opinion joined by ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, J.
PITTMAN, J., specially concurs by separate written opinion joined by HAWKINS and DAN M. LEE, P.JJ., PRATHER and SULLIVAN, JJ.
*871 PITTMAN, Justice, Specially Concurring:
Even though I believe the majority has arrived upon the correct result today, I am compelled to write separately because I believe the majority's decision regarding the instructions given at trial leaves one with the impression that damages must be awarded in cases where a peremptory instruction regarding negligence is proper. Although I believe that Instruction P-1(A), which directs a verdict for McCary on the issue of negligence, and Instruction C-4, which allows the jury to return a general verdict for Caperton, may appear to conflict, the jury on remand does not have to award damages unless they so find.
An instruction which gives a jury the opportunity to return a general verdict for a defendant, such as Caperton, does not necessarily allow the jury to ignore a peremptory instruction on liability. The peremptory instruction commanded the jury to assess the accident "a result of the negligence" of Caperton. Negligence is the word used to describe the conduct of the defendant. For a plaintiff to receive compensation, a cause of action for negligence requires more than negligent conduct. Simple tort theories mandate that a plaintiff must show: (1) a duty to use reasonable care on behalf of the defendant; (2) a breach of that duty by the defendant; (3) causation, or a reasonably close causal connection between the conduct and the resulting injury; and (4) damages in order to recover. Just because a defendant acted negligently, or breached a duty, does not mean that a plaintiff is entitled to an award. A plaintiff must prove damages also. Proof of damages is an essential part of a plaintiff's cause of action based on negligent conduct. The lower court sub judice instructed the jury peremptorily as to Caperton's conduct and allowed the jury to make a determination as to the final outcome of the cause of action. The peremptory instruction, Instruction P-1(A), and the instruction allowing a general verdict for Caperton, Instruction C-4, appear to conflict in the case at bar. If more carefully worded, instructions such as the ones sub judice may be permissible.
There was testimony below that the jury could have considered when awarding the zero verdict. A verdict from the jury, "We the jury find for the plaintiff and award $0.00 damages," would have delineated to this Court that the jury was not confused by Instructions P-1(A) and D-4. But, because the two instructions can be construed to conflict, we cannot be sure upon a simple finding for the defendant, Caperton, that the jury was not confused.
I would reverse and remand the cause sub judice based on a violation of the collateral source rule, and I would reverse and remand based on the alleged erroneous/conflicting instructions with the understanding that not all peremptory instructions on liability require an award of damages.
HAWKINS and DAN M. LEE, P.JJ., PRATHER and SULLIVAN, JJ., join this opinion.
BANKS, Justice, concurring in part:
I concur in the result reached by the majority because I agree that this case should be reversed for violation of the Collateral Source Rule.
I do not agree with Parts II and III of the majority opinion. A finding that the plaintiff suffered no injury as a result of the accident and, consequently, a verdict for the defendant, is not per se inconsistent with a peremptory instruction on negligence. Rotwein v. Holman, 529 So.2d 173 (Miss. 1988). The evidence of plaintiff's injuries here is not so compelling as to preclude a fair-minded jury from concluding that no injury, in fact, occurred.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, J., join this opinion.
NOTES
[1] McCary also had an automobile accident in 1979.