756 So.2d 15 (1999)
Dorothy THORNTON and William Thornton, Appellants,
v.
Harvey C. SANDERS, M.D., Appellee.
No. 97-CA-00788-COA.
Court of Appeals of Mississippi.
May 4, 1999.
Rehearing Denied August 10, 1999.
Certiorari Denied November 18, 1999.
*16 Sanford E. Knott, Jackson, Attorney for Appellants.
Whitman B. Johnson III, Frances R. Shields, Jackson, Attorneys for Appellee.
BEFORE THOMAS, P.J., LEE, AND SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. On November 20, 1991, Dorothy Thornton and William Thornton filed suit against Harvey S. Sanders, M.D., alleging medical malpractice. Dr. Sanders responded on December 20, 1991 denying said allegations of medical malpractice. After a three day jury trial, commencing on March 17, 1997, the jury returned a verdict in favor of Dr. Sanders, and final judgment was entered. Aggrieved, Thornton appeals to this Court the following issue of error:

I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN RULING THAT IMPEACHMENT OF APPELLANT WAS AN EXCEPTION TO THE COLLATERAL SOURCE RULE.
Finding reversible error, we reverse and remand for a new trial.

FACTS
¶ 2. In mid November, 1989, Dorothy Thornton was admitted to St. Dominic Jackson Memorial Hospital in Jackson, Mississippi for treatment of her diabetic condition. Specifically, Thornton was admitted for treatment of her peripheral vascular disease and ulcers affecting her left foot, both of which were the result of her diabetic condition. Thornton underwent three separate surgical procedures during her stay at St. Dominic on November 21, November 22, and November 25, 1989. In each of these surgical procedures, Dr. Sanders was the attending surgeon. As a result of the procedures performed by Dr. Sanders, the vascular ailment suffered by Thornton was corrected and blood flow in her left leg was restored.
¶ 3. Thornton's negligence claim was not alleged to have been the result of any of the three surgical procedures performed by Dr. Sanders on November 21, November 22, or November 25, 1989. Thornton's claim alleges that Dr. Sanders was negligent in the applications of the plaster of Paris splints applied to her left leg after the second and third surgical procedures. Following the first surgical procedure performed by Dr. Sanders on November 21, Thornton's leg was placed on pillows with little flexion. The second surgical procedure performed on November 22 was necessitated due to clotting of the saphenous vein. In order to prevent continued clotting of the vein, Dr. Sanders applied the first plaster of Paris splint. The splint was applied in order to keep the leg at an approximate 30° angle and allow the vessels to remain open during recovery.
¶ 4. On November 25, 1989, Dr. Sanders performed the third surgery after an arteriogram revealed reoccurring blockage. Thornton's splint was removed and the surgery was performed. After completion of the surgery, a new plaster of Paris split was applied by Dr. Sanders. Thornton then remained at St. Dominic until she was discharged on December 2, 1989. On her last day at St. Dominic, Thornton's plaster splint was removed and she was fitted with a brace to replace the plaster of Paris split. Dr. Sanders testified that before *17 her release he instructed Thornton on the proper method of removing and replacing the brace. Thornton maintains that after she removed the brace the following day as directed by Dr. Sanders, her husband discovered a burn like wound on the inside of her thigh on the left leg. Thornton maintains that the wound had to have occurred sometime after the second surgery and up until the time her husband noticed the wound. At trial, Thornton argued that since Dr. Sanders had exclusive control over the operation and fitting of the splint, he was negligent and liable for her damages under the doctrine of res ipsa loquitur. Following the jury verdict for Dr. Sanders, Thornton filed a motion for a new trial on April 10, 1997 and, as grounds for said motion, argued that the collateral source rule was violated at trial thereby warranting a new trial. That motion was denied on May 14, 1997.

ANALYSIS

WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN RULING THAT IMPEACHMENT OF APPELLANT WAS AN EXCEPTION TO THE COLLATERAL SOURCE RULE
¶ 5. Thornton argues that the Mississippi Supreme Court has never recognized an exception to the collateral source doctrine and that as such, the trial court erred in doing so. On appeal, Thornton urges this Court to reverse that jury verdict and grant a new trial.
¶ 6. During Mr. Thornton's direct examination, the following testimony, in pertinent part, was elicited:
Q. If you had to put a value on your wife's contribution to you or loss of contribution for the business, what would you value it at?
A. [E]verything that we had saved and everything diminished in doctor bills. We was milked. We was drained. Even much of the insurance companies questioned us and questioned some of the work some of the doctors were doing, of the money that we was milked out of. And she couldn't knowmoney was just coming, because I'm the provider of my house. Those bills and everything be taken care of. My children is educated. It was taken care of.
¶ 7. In response to the testimony elicited on direct examination, the defendant sought to further question Mr. Thornton during cross examination on the issue of whether the insurance companies had treated them unfairly as was implied in his direct examination.
Q. And I believe that you were also telling the ladies and gentlemen of the jury that you thought the insurance companies hadn't treated you properly?
BY MR. KNOTT: Objection, your Honor.
BY THE COURT: What's the grounds for the objection?
BY MR. KNOTT: Your Honor, the rules of evidence specifically provide that is inadmissible to discuss those matters. And at a certain point, it is grounds for a mistrial; therefore, your Honor, we state that at this time.
BY THE COURT: Because the door was opened during his testimony on direct, the objection is overruled.
BY MS. SHIELDS: (Continuing)
Q. And you were telling the ladies and gentlemen of the jury about your financial problems because of her medical bills, weren't you?
A. Right.
Q. Isn't it true that Andrew Jackson Life Insurance Company gave Mrs. Thornton a settlement for $25,000 following the loss of her leg?
A. I don't know nothing about that.
BY MS. SHIELDS: Permission to approach, Judge?
BY THE COURT: Yes, you may.

*18 A. (Witness examines document.) Mrs. Dorothy Ruth Thornton. That's it.
Q. And the amount is $25,000?
BY MR. KNOTT: Your Honor, I want to object at this time with a different ground. That is, the amputation that counsel opposite is referring to happened in January of 1991. Our claim is for the burns that she sustained starting on or about November 22nd of '89. This is completely improper, completely prejudicial to my clients case. And, your Honor, once again, we ask again that you will exclude this testimony at this time, or in the alternative, grant a mistrial.
BY THE COURT: Mr. Knott, the door was opened in your question on direct, when this witness testified at length about all of the problems he had as a result of the allegations of this lawsuit. That door has been opened, and for that reason, that objection is overruled.
BY MS. SHIELDS: (Continuing)
Q. Reverend, as I was saying, the amount of the check is $25,000, is it not?
A. Yes, ma'am, that's what it is.
Q. From Andrew Jackson Life Insurance Company to Mrs. Thornton?
A. Uh-huh.
Q. Do you remember getting that check?
A. Do I remember getting this check? I remember her getting a check and everything, but I don't remember signing it or nothing like that.
Q. It's made out to her, is it not?
A. It's made out to her directly, you see. But I remember she mentioned that she got a check, but not the amount.
¶ 8. We are asked to rule on the issue of whether the impeachment exception should be recognized under the collateral source doctrine. In addressing this issue, Thornton is correct that the impeachment exception to the collateral source doctrine has never been recognized by our supreme court. A detailed review of our supreme court's holdings involving the collateral source rule fails to reveal any exception to the rule. See McCollum v. Franklin, 608 So.2d 692, 695 (Miss.1992) (holding collateral source doctrine precludes defendant in automobile accident from cross examining plaintiff as to whether plaintiff has received insurances proceeds, including plaintiffs heath insurance); McCary v. Caperton, 601 So.2d 866, 868 (Miss.1992) (holding that no exception to the collateral source doctrine existed to allow evidence that plaintiff was engaged in an insurance scam attempting to collect insurance proceeds for injuries she never received); Eaton v. Gilliland, 537 So.2d 405, 408 (Miss. 1989) (holding that defendant's attempted elicitation of evidence of insurance proceeds paid with respect to the accident by a collateral source could have been prejudicial and confusing, further the jury could have been left with the impression that the plaintiff was attempting to improperly and illegally "double dip" or receive a "wind fall" to which he was not entitled); Central Bank of Mississippi v. Butler, 517 So.2d 507, 511 (Miss.1987) (holding that collateral source doctrine properly applied to prevent elicitation of evidence that plaintiff received compensation from surety bond maintained completely independent of any efforts made by plaintiff); Star Chevrolet Co. v. Green by Green, 473 So.2d 157, 162 (Miss.1985) (holding that insurance in behalf of the plaintiff cannot be set up by the adverse party in mitigation of the loss); Preferred Risk Mut. Ins. Co. v. Courtney, 393 So.2d 1328, 1332-33 (Miss.1981) (holding that under source collateral rule, a tortfeasor is not entitled to have the damages for which he is liable reduced by proving that an injured party has received compensation from a collateral source wholly independent of the tortfeasor).
¶ 9. In response, Sanders argues that while Mississippi has yet to recognize the impeachment exception of the collateral source doctrine, it has been meet with approval in the jurisprudence of a great number of our sister states. See Hack v. State Farm Mut. Auto. Ins. Co., 37 Wis.2d *19 1, 154 N.W.2d 320, 325 (1967) (holding collateral source payments admissible for purposes of impeachment); Corsetti v. Stone Co., 396 Mass. 1, 483 N.E.2d 793, 801 (1985) (holding that evidence of collateral source income may be admissible, in the discretion of the trial judge, as probative of a relevant proposition or credibility of a particular witness); Warren v. Ballard, 266 Ga. 408, 467 S.E.2d 891, 893 (1996) (holding impeachment by evidence of collateral source allowed if false testimony is related to material issue in the case); Evans v. Wilson, 279 Ark. 224, 650 S.W.2d 569, 570 (1983) (holding collateral source may be admissible to impeach plaintiff's testimony). Sanders asserts, as has been reasoned in the holdings he has cited in his reply brief, that the right to impeachment outweighs the potential of prejudice to the injured party through the admission of collateral source evidence for the limited purpose of impeachment.
¶ 10. However, no exception has yet to be acknowledged by our supreme court. Only one case to date has similarly addressed the issue of an exception's recognition under the collateral source rule. McCary v. Caperton, 601 So.2d 866 (Miss. 1992). In McCary, the trial court allowed the defendant, Caperton, to elicited collateral source testimony during McCary's cross examination. The trial court ruled that the collateral source testimony was admissible based on the subject matter that was brought up during direct examination. McCary, 601 So.2d at 868. On appeal, Caperton asserted that the eliciting the collateral source testimony at issue was not offered for the purpose of reducing the amount of the award that the jury could return should they find Caperton liable. Caperton argued that the collateral testimony was sought for purpose of exposing McCary's participation in a possible insurance scam and that she was trying to collect for injuries she never suffered. Id. at 868-69. The Mississippi Supreme Court expressly rejected Caperton's argument for his proffered exception to the collateral source doctrine in stating that "we have never recognized such an exception to the collateral source rule, and we refrain from doing so here." Id. at 869.
¶ 11. Under this rationale, we likewise refrain from recognizing any exception to the collateral source doctrine in light of the precedent set forth by the Mississippi Supreme Court. The collateral source doctrine excludes evidence of monies or compensation received by the injured person from other sources wholly independent from the defendant tort-feasor. Under this exclusion, the doctrine seeks to prevent the interjection of prejudicial or confusing evidence of compensation received by the injured party from an independent source; evidence which, if admitted, could result in no award to an injured party or in a reduction of the jury's award of damages to the injured party by the compensation already received. Following the Mississippi cases cited herein, particularly McCary, we hold that the trial court committed reversible error in the admission of collateral source testimony.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS ARE ASSESSED AGAINST THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ., CONCUR.