Today's appeal is from an adverse jury verdict of the second trial of the Circuit Court of Forrest County, Mississippi, in the May 1986 term of said Court (a mistrial being declared in the first trial in January 1986).
The complaint sought damages of $176,500 growing out of an automobile collision between Henry Thomas Eaton (hereinafter Eaton), the appellant, and Jimmy L. Gilliland (hereinafter Gilliland), the appellee, on April 22, 1985, in the City of Hattiesburg, Mississippi. Feeling aggrieved by the adverse ruling, Eaton appeals and assigns as error:
 I. The Trial Court Erred in Overruling Plaintiff's Motions In Limine; Erred in Permitting Counsel for Defendant to Cross-Examine Plaintiff Relative to Insurance Proceeds Paid by a Collateral Source; and Erred in Refusing to Grant Proposed Jury Instruction Number P-10.
 II. The Trial Court Erred in Refusing to Grant Plaintiff's Peremptory Jury Instruction (Proposed Instruction Number P-1).
 III. The Trial Court Erred in Overruling Plaintiff's Motion for Judgment N.O.V. and Motion for a New Trial.
 IV. The Trial Court Erred in Refusing to Grant Plaintiff's Jury Instruction Number P-8.
 V. The Trial Court Erred in Granting Defendant's Jury Instruction Number D-8.
 VI. The Trial Court Erred in Granting Defendant's Jury Instruction Number D-5.
 VII. The Trial Court Erred in Granting Defendant's Jury Instruction Number D-6.
 VIII. The Trial Court Erred in Excluding Officer Annie McGee's Testimony that the Plaintiff was Not Exceeding the Speed Limit. *Page 406 
Finding merit in assignment of error number I, we reverse and remand.
 STATEMENT OF THE FACTS
On April 22, 1985, Eaton, a 30-year-old Mississippi Department of Corrections employee, was involved in an automobile accident at the intersection of Hutchenson Avenue and Stadium Drive in Hattiesburg, Mississippi. Eaton's vehicle collided with a vehicle driven by the defendant, Jimmy Gilliland, a 19-year-old student employed by Gilliland Electronics.
Eaton left home in Hattiesburg at approximately 4:30 p.m., accompanied by his wife, Linda Eaton, and his two children, driving a 1985 Couger automobile. Eaton travelled in a southerly direction on West Fourth Street and turned right onto Hutchenson Avenue. As Eaton approached the intersection of Hutchenson Avenue and Stadium Drive, Jimmy Gilliland was approaching the intersection from Stadium Drive; the two vehicles collided in the center of the intersection.
At trial, Eaton testified that at the time of the accident, he was travelling on Hutchenson Avenue towards Hardy Street, doing 25-30 miles per hour. As he approached the intersection of Stadium Drive and Hutchenson, Eaton claims that Gilliland ran astop sign and pulled out in front of him in a pickup truck. After the impact, Eaton's vehicle stayed in the same lane of traffic and Gilliland's vehicle proceeded across Hutchenson Avenue. Eaton claims to have had the speed monitor on his vehicle set at 30 miles per hour to alert him if he exceeded this speed. Eaton saw Gilliland's vehicle out of the corner of his windshield before impact. Eaton did not know how far it was from the point of impact to the point where he could see Gilliland coming down the street, but estimated the distance to be less than 100 feet.
Contrary to Eaton's testimony, Gilliland claims that he stopped at the stop sign at Stadium Street and Hutchenson Avenue, looked to the right and saw Eaton's vehicle some 200 to 475 feet away. Thinking he had time to cross the intersection before Eaton's arrival there, Gilliland proceeded to cross. When he first saw Eaton's vehicle, Gilliland estimated that it was travelling 30 miles per hour and started across the intersection, but by the time he looked back at Eaton, Eaton had increased his speed to 55-60 miles per hour. Attempting to avoid the accident, Gilliland testified that he tried to get across the intersection, but could not and was struck by Eaton.
At the conclusion of the second trial, the judge refused to grant Eaton's peremptory jury instruction numbers P-1, P-8 and P-10, and the case was submitted to the jury which returned a verdict for Gilliland.
 ANALYSIS
 Appellant's first assignment of error is: The Trial Court Erred in Overruling Plaintiff's Motions In Limine; Erred in Permitting Counsel for Defendant to Cross-Examine Plaintiff Relative to Insurance Proceeds Paid by a Collateral Source; and Erred in Refusing to Grant Proposed Jury Instruction Number P-10.
What Eaton is contending is that prior to the commencement of trial on January 30, 1986, he filed a motion in limine
requesting the trial court to prohibit Gilliland from making any statement or reference to the fact that 80% of Eaton's emergency room treatment, two periods of hospitalization at Methodist Hospital, bills for treatment by Dr. Edward A. Attix, and services rendered by Hattiesburg Radiology for x-rays, etc., were paid by an independent collateral source, i.e., hospital and medical insurance with Blue Cross/Blue Shield provided by Eaton and his employer.
Seeking to restrict Eaton's evidence as to damages, Gilliland also filed a motion in limine on January 30, 1986, requesting the trial court to preclude all evidence concerning medical billspaid by Blue Cross/Blue Shield and that Eaton's damage testimony and evidence be restricted to medical bills not paid by Blue Cross/Blue Shield.
The trial court indicated he would have sustained the motionin limine of Eaton, as well as sustained objections to cross-examination of Eaton by Gilliland as to the bills paid by Blue Cross/Blue Shield, a collateral source of insurance to Gilliland, if *Page 407 
Blue Cross/Blue Shield had not been ordered to join in as an additional plaintiff. Blue Cross refused to join, but apparently relied upon its right to proceed against Eaton if he prevailed. The learned trial judge stated:
 [A]nd I will indicate in this record that I would think you would certainly be right as far as the collateral source doctrine were it not for the fact that at one time — and I think this is clear in this record — it needs to be clear at this point, if not for appeal purposes — I think you would be right were it not for the fact that one time Blue Cross/Blue Shield was ordered into this lawsuit by order of this court.
There is no dispute but that Eaton had medical and hospital insurance with Blue Cross/Blue Shield through his employer, Mississippi Department of Corrections, which was a completely independent and collateral source to the appellee here and defendant below, Gilliland.
The rule of this Court as to admitting evidence on cross-examination, over objection, of the amount of money Eaton had received from a collateral source, wholly independent of the wrongdoer, is incompetent and cannot be set up by the latter in mitigation or reduction of damages. See Coker v. Five-Two TaxiService, 211 Miss. 820, 52 So.2d 356-57 (1951), where we said:
 The appellant also assigned as error in permitting the appellee on cross examination of appellant, over objection, to testify to the amount of money that he had received under the Workmen's Compensation Law. We are of the opinion that this evidence was incompetent. 25 C.J.S., Damages, § 99, states "compensation or indemnity for the loss received by plaintiff from a collateral source, wholly independent of the wrongdoer, as from insurance, cannot be set up by the latter in mitigation or reduction of damages, and, by some authorities, this rule applies to payment of salary or expenses."
[Emphasis added] Over objection Gilliland's attorney on cross-examination elicited the following testimony from Eaton:
 CROSS EXAMINATION CONTINUES BY HON. JACK LAND
 Q: Mr. Eaton, you have identified Plaintiff's Exhibit 8 from Methodist Hospital. I showed you that bill and you said you received that bill for services rendered?
 A: Yes, sir, that's correct.
 Q: How much of that bill have you, Harry Eaton, paid?
 A: I haven't paid any of it, my insurance has paid some of it, I understand.
 Q: Is that Blue Cross-Blue Shield?
 A: That is Blue Cross-Blue Shield.
 Q: You have not paid any of that?
 A: No, sir.
 Q: I hand you Plaintiff's Exhibit 9 that you have identified as the bill you received from Methodist Hospital for the April 27th, 1985, hospitalization — same question?
 A: Yes, sir, this is correct.
 Q: And how much of that bill have you paid?
 A: I haven't paid any of it. I signed a subrogation with my insurance company and they paid, I believe, 80% of the total bill.
 Q: You know that for a fact, that they have paid 80%?
 A: Yes, sir.
 Q: Same thing on Exhibit 8?
 A: That's correct.
 Q: Now I hand you Plaintiff's Exhibit 10 that purports to be a bill you received from Methodist Hospital for the September 8th, 1985, charges, can you tell me again have you paid any of that?
 A: No, sir, this is the same thing that applies to the previous questions.
 Q: Blue Cross and Blue Shield?
 A: Right. They paid 80% of it.
 Q: So these three bills you identified Blue Cross and Blue Shield paid 80% of 'em?
 A: 80% of them. I did sign subrogation that they are to be reimbursed. *Page 408 
 Q: Now with regard to Dr. Attix's bill, I hand you that. That is Exhibit 7. Have you paid anything on that bill?
 A: No, sir.
 Q: Blue Cross and Blue Shield paid it?
 A: They paid two payments on it, I saw a statement the other day, they made two payments on this bill.
 Q: Do you know how much?
 A: $180.00, total.
 Q: How about Hattiesburg Radiology, your exhibit 12, did you pay any of that?
 A: This is insurance also.
 Q: What?
 A: Insurance, Blue Cross-Blue Shield, they paid 80% of it.
Eaton contends, and we agree, that Gilliland was obviously attempting to prejudice the jury by showing that Eaton sustained no damages or very minimal damages because 80% of his medical bills were paid by Blue Cross/Blue Shield, a collateral source, wholly independent of the wrongdoer. Further, Gilliland was allowed to present to the jury the impression that Eaton, plaintiff below, was improperly seeking to recover damages for medical bills that had already been paid, thereby attempting to collect twice for the same damages.
Parenthetically, this tactic also allowed Gilliland to have the damages for which he was liable reduced in violation of the rule announced in Coker v. Five-Two Taxi Service, supra, where this Court said:
 The wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him. Under this general rule, insurance in behalf of the injured person cannot be set up by the wrongdoer in mitigation of the loss.
Id. 52 So.2d at 357.
We have recently spoken to and adopted the rule that "a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor." In Central Bank of Mississippi v. Butler,517 So.2d 507 (Miss. 1987), Justice Prather, speaking for the Court, stated:
 Mississippi has adopted and follows the "collateral source rule." Under this rule, a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant tortfeasor. Preferred Risk Mutual Insurance Co. v. Courtney, 393 So.2d 1328, 1331 (Miss. 1981); Clary v. Global Marine, Inc. 369 So.2d 507, 510 (Miss. 1979); Coker v. Five-Two Taxi Service, Inc., 211 Miss. 820, 826, 52 So.2d 356, 357 (1951).
We are unable to say that the violation of this rule in attempting to reduce Gilliland's liability before the jury was not prejudicial and confusing. For certain the jury could have gotten the impression that Eaton was attempting to improperly and illegally "double dip" or receive a "wind fall" to which he was not entitled because 80% of the medical and hospital bills had already been paid by an insurance company which was, as a matter of law, wholly independent of him (Gilliland), the wrongdoer. To say the least, it was highly confusing and had caused a mistrial at the first trial in January 1986. The trial court was well aware of the problem by virtue of the motions in limine filed and argued by Eaton and Gilliland as well as the erroneous ruling thereon by the learned circuit judge.
Finding reversible error, we have no alternative except to remand this case to the Circuit Court of Forrest County for a new trial in a manner not inconsistent with this opinion. We do not address any other assignments of error, but would call to the attention of the learned trial judge and counsel that therefused testimony of Officer Annie Magee is to be considered in light of our recent case of Hollingsworth v. Bovaird [sic]Supply Co., 465 So.2d 311 (Miss. 1985), where we stated: *Page 409 
 Furthermore, like any other witness offered as an expert, the trial judge is called upon to exercise his sound discretion in determining whether the witness is legitimately qualified as an expert in the applicable fields of scientific knowledge.
Accordingly the order of the Circuit Court of Forrest County, Mississippi, dated the 12th day of May, 1986, is vacated and this case is reversed and remanded for a new trial or other disposition not inconsistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
PITTMAN, J., not participating.