# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01011-SCT

*BEVERLY D. BUSICK*

*v.*

*SUSAN I. ST. JOHN*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/14/2002 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BILL WALLER, SR. |
| ATTORNEY FOR APPELLEE: | WILLIAM W. McKINLEY, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 10/02/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE SMITH, P.J., COBB AND CARLSON, JJ.

## SMITH, PRESIDING JUSTICE, FOR THE COURT:

¶1.     This personal injury damage action comes to this Court from a take-nothing judgment against the plaintiff, Beverly D. Busick, in the Rankin County Circuit Court where the jury found that the defendant, Susan I. St. John, was not negligent in the two-car accident. Aggrieved by the judgment, Busick appeals to this Court.

## **FACTS**

¶2.     This case arises from a two-car accident in a grocery store parking lot on December 12, 1998, in Pearl, Mississippi. Beverly D. Busick, the plaintiff, was driving south in her 1988 Cadillac along the side drive of the parking lot toward U.S. Highway 80. Susan I. St. John, the Defendant, driving in a Toyota

Tercel, was attempting to turn from one driveway to that same drive along the side of the parking lot. She stopped at a row of bushes where she planned to turn left. Busick alleges that approximately 100 yards before she reached Highway 80, St. John came out of a driveway from the parking lot without stopping and ran directly in front of her vehicle, causing the accident.

¶3.     However, St. John contends that because the bushes were overgrown, she inched forward until she could see around the corner and stopped again. St. John testified that, while stopped, she could see Busick's vehicle coming toward her. St. John contends that, despite the fact that Busick had adequate time and adequate distance of approximately 300 feet to avoid her, Busick neither reduced her speed nor did she try to avoid St. John's car. According to St. John, Busick's car collided with her vehicle. Busick testified that she was going 35 mph down a side drive in the parking lot and did not brake until a moment before the collision. Busick submits that she had traveled 300 feet before reaching the side road and had the right-of-way to continue south until she reached Highway 80. Busick argues that the accident occurred on a publicly used parking lot street which was 40 feet wide and terminated at the point where St. John entered without stopping from a 25 feet wide side street.

¶4.     Busick alleges that the impact of the vehicles caused her to be thrown forward into her steering wheel. She contends that the accident caused injuries to her head, neck and back. As a result, Busick claims to have suffered extensive pain. Busick asserts that the accident caused a disc in her cervical spine to protrude and place pressure on the nerves in her neck causing pain in her shoulder and otherwise disabling her.

¶5.     The jury returned a unanimous answer in the negative to the following special interrogatory. "Do you find Susan St. John guilty of negligence which proximately caused or contributed to the injuries and/or damages of the Plaintiff?"

¶6.     The trial court entered final judgment for St. John and denied post-trial motions. Busick appeals.

## DISCUSSION

### I.     WHETHER THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶7.     When the jury has returned a verdict in a civil case, we are not at liberty to direct that judgment be entered contrary to that verdict short of a conclusion on our part that, given the evidence as a whole, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could have found as the jury found. *Snapp v. Harrison*, 699 So.2d 567, 569 (Miss. 1997); *Starcher v. Byrne*, 687 So.2d 737, 739 (Miss. 1997); *Junior Food Stores, Inc. v. Rice*, 671 So.2d 67, 76 (Miss. 1996); *Bell v. City of Bay St. Louis*, 467 So.2d 657, 660 (Miss. 1985). "In reviewing a jury verdict, this Court resolves all conflicts of evidence in the appellee's favor and determines all reasonable inferences from testimony given towards the appellee's position. Reversal occurs only where the facts presented are so overwhelming in favor of the appellant's position that reasonable jurors could not have found for the appellee." *Thompson Mach. Commerce Corp. v. Wallace*, 687 So.2d 149, 151-52 (Miss. 1997) (citations omitted). An essential part of the claim in a personal injury tort case is to demonstrate, not only the extent of the injury, but that the negligence of the defendant was the proximate cause of the injury. *Id.* Causation is generally to be determined by the jury. *Donald v. Amoco Prod. Co.*, 735 So.2d 161, 174 (Miss. 1999). Our

3

standard for review is de novo in passing on questions of law. ***Miss. Farm Bureau Cas. Ins. Co. v. Curtis***, 678 So.2d 983, 987 (Miss. 1996); ***Seymour v. Brunswick Corp***., 655 So.2d 892, 895 (Miss. 1995).

¶8. Busick argues that the verdict was against the overwhelming weight of the evidence based on the physical facts and the evidence offered by both parties. This Court must resolve all conflicts of evidence in St. John's favor and draw all reasonable inferences from testimony in favor of St. John. The jury chose to believe St. John's evidence which indicates that she acted in a reasonable manner when she pulled forward to gain an unobstructed view of traffic. Further, the jury favored the argument that she did so at a time when Busick's vehicle was not an immediate hazard. Busick testified that she was traveling at a rate of 35 mph in the parking lot and that she did not see St. John nor attempt to stop until a moment before the accident. Randy Taggart, testified about where the cars came to rest after the accident, and his testimony was consistent with St. John's version of the accident. We find no merit to this issue.

## II. WHETHER THE TRIAL COURT ERRED IN ALLOWING ST. JOHN TO INTRODUCE FACTS AND CIRCUMSTANCES RELATED TO BUSICK'S HEALTH INSURANCE COVERAGE AT THE TIME OF THE ACCIDENT.

¶9. The verdict of the jury is to be given great weight. No trial is free of error; however, to require reversal the error must be of such magnitude as to leave no doubt that the appellant was unduly prejudiced. ***Davis v. Singing River Elec. Power Ass'n***, 501 So.2d 1128, 1131 (Miss. 1987); ***Parmes v. Illinois Cent. Gulf R.R.***, 440 So.2d 261, 268 (Miss. 1983). Where error involves the admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. ***In re Estate of Mask***, 703 So.2d 852, 859 (Miss. 1997); ***Terrain Enters., Inc. v. Mockbee***, 654

4

So.2d 1122, 1131 (Miss. 1995). This Court has held that "[t]he standard of review regarding admission [or exclusion] of evidence is abuse of discretion." ***Thompson Mach. Commerce Corp. v. Wallace***, 687 So.2d at 152.

¶10.    Busick argues that the trial court erred when, over objection, it admitted evidence related to facts and coverage of her health insurance at the time of the accident. St. John argues that this evidence was not offered for the purpose of reducing damages but to impeach Busick's testimony as to the reasons she ceased physical therapy.

¶11.    The records at issue pertain to Busick's treatment at the Capital Orthopedic Clinic. Those records contain a sentence in which Busick stated that although her health insurance company asked her to settle, she was afraid to do so because of her symptoms. Busick's attorney indicated fear that the jury would interpret this as evidence of her liability insurance. The record indicates that the court required the statement to be redacted.

¶12.    Busick testified that she was not able to continue physical therapy for injuries caused by the accident because she could not afford it. St. John introduced evidence that Busick had paid only $45 as her part of those medical expenses. Busick contends that it was error to allow St. John to impeach her by eliciting testimony in which she was forced to make reference to payments made by her health insurance provider. However, St. John argues that Busick made no objection to the testimony at the time. Busick's attorney stated that at the time of the statement, he was doing something else and did not hear it until afterwards when his assistant called it to his attention. Busick's attorney requested, in lieu of a motion for a mistrial, that the jury be instructed to disregard the statement. This was done by the trial court. Additionally, the trial court gave a limiting instruction that the testimony could only be used for impeachment

5

and not for the purpose of reduction in damages. Jury Instruction number 16 was given to the jury and stated: "The Court instructs the jury that the fact that the Plaintiff has or had medical and hospitalization insurance cannot be considered by you in awarding damages."

¶13. The trial court found that M.R.E. 411, only makes inadmissible proof of a party's liability insurance so that negligence cannot be imputed to that party simply because of the insurance. The judge cited to the second sentence which says that exclusion of evidence of liability insurance is not required when offered for another purpose such as bias or prejudice of a witness. He distinguished the statement because the evidence here concerned medical insurance and because Busick stated earlier that she discontinued therapy because she could not afford it.

¶14. The collateral source rule in Mississippi provides that "[c]ompensation or indemnity for the loss received by plaintiff from a collateral source, wholly independent of the wrongdoer, as from insurance, cannot be set up by the [defendant] in mitigation or reduction of damages...." **Coker v. Five-Two Taxi Serv.**, 211 Miss. 820, 826, 52 So.2d 356, 357 (1951) (quoting 25 C.J.S. *Damages*, § 99). *Accord*, **Baugh v. Alexander**, 767 So. 2d 269, 272 (Miss. Ct. App. 2000).

¶15. In **McCary v. Caperton**, 601 So.2d 866 (Miss. 1992), we held that the trial court committed reversible error in allowing the defendant to introduce evidence of McCary's insurance coverage or benefits of sick leave. **Id.** at 869. We were asked to rule on the issue of whether an impeachment exception should be recognized under the collateral source doctrine. **Id.** Our decisions have not recognized an exception to the collateral source rule. *E.g.*, **McCollum v. Franklin**, 608 So.2d 692, 695 (Miss. 1992) (holding collateral source doctrine precludes defendant in automobile accident from cross-examining plaintiff as to

6

whether plaintiff has received insurances proceeds, including plaintiff's health insurance); *Eaton v. Gilliland*, 537 So.2d 405, 408 (Miss. 1989) (holding that defendant's attempted elicitation of evidence of insurance proceeds paid with respect to the accident by a collateral source could have been prejudicial and confusing, further the jury could have been left with the impression that the plaintiff was attempting to improperly and illegally "double dip" or receive a "wind fall" to which he was not entitled); *Central Bank of Miss. v. Butler*, 517 So.2d 507, 511 (Miss. 1987) (holding that collateral source doctrine properly applied to prevent elicitation of evidence that plaintiffs received compensation from surety bond maintained completely independent of any efforts made by defendant); *Star Chevrolet Co. v. Green by Green*, 473 So.2d 157, 162 (Miss. 1985) (holding that insurance in behalf of the plaintiff cannot be set up by the adverse party in mitigation of the loss); *Preferred Risk Mut. Ins. Co. v. Courtney*, 393 So.2d 1328, 1332-33 (Miss. 1981) (holding that under the collateral source rule, a tortfeasor is not entitled to have the damages for which he is liable reduced by proving that an injured party has received compensation from a collateral source wholly independent of the tortfeasor). However, an impeachment exception has been recognized in several states. *E.g., Evans v. Wilson*, 650 S.W.2d 569, 570 (Ark. 1983) (holding collateral source may be admissible to impeach plaintiff's testimony); *Warren v. Ballard*, 467 S.E.2d 891, 893 (Ga. 1996) (holding impeachment by evidence of collateral source allowed if false testimony is related to material issue in the case); *Corsetti v. Stone Co.*, 483 N.E.2d 793, 801 (Mass. 1985) (holding that evidence of collateral source income may be admissible, in the discretion of the trial judge, as probative of a relevant proposition or credibility of a particular witness); *Hack v. State Farm Mut. Auto. Ins.*

***Co.***, 154 N.W.2d 320, 325 (Wis. 1967) (holding collateral source payments admissible for purposes of impeachment).

¶16.    We find that this assignment of error has no merit as Busick's attorney failed to make both a timely objection and a timely motion for a mistrial. The evidence related to Busick's health insurance was admitted to impeach her testimony that she suffered permanent injuries as a result of the accident. Busick testified that she ceased physical therapy because she could no longer afford it. The fact that she spent only $45 on that therapy discredited her testimony. Further, the specific testimony was not solicited until after a long line of questioning during which Busick's attorney failed to object. Her attorney admitted that he was "doing something else." Her counsel moved for a limiting instruction which was granted by the trial court. There was no motion for a mistrial until after the close of evidence with Busick's counsel refusing to argue the point further and indicating only that he was "satisfied that that's (the limiting instruction) the way its going to be handled." The testimony was not solicited for the purposes of mitigating her loss or reducing damages owed to Busick. We find that there was no reversible error by the trial court in allowing this testimony with an appropriate limiting instruction.

**III.    WHETHER THE TRIAL COURT ERRED IN REFUSING TO INSTRUCT THE JURY ON COMPARATIVE NEGLIGENCE, FAILURE TO KEEP A PROPER LOOKOUT, FAILURE TO KEEP CONTROL OF HER VEHICLE AND REASONABLE COMPENSATION FOR HER INJURIES.**

¶17.    In determining whether reversible error lies in the granting or refusal of various instructions, this Court reads all the instructions actually given as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. ***Coleman v. State***, 697 So.2d 777, 782 (Miss. 1997); ***Collins v. State***, 691 So.2d 918, 922 (Miss. 1997). This Court has

clearly articulated the standard we are to follow when assessing whether there has been a submission of legally erroneous instruction:

> [O]n appellate review, we do not isolate the individual instruction attacked, but rather we read all of the instructions as a whole. Defects in [a] specific instruction do not require reversal where all instructions taken as a whole fairly--although not perfectly--announce the applicable primary rules of law ... Where it may be fairly charged that one or more instructions may have been confusingly worded, we should not reverse if other instructions clear up the confusing points.

*Smith v. Payne*, 839 So.2d 482, 488 (Miss. 2002);  However, if those instructions do not fairly or adequately instruct the jury, we can and will reverse. *Burton by Bradford v. Barnett*, 615 So.2d 580, 583 (Miss. 1993).  This Court articulated the standard of review for considering the grant or denial of jury instructions in *Hill v. Dunaway*, 487 So.2d 807, 809 (Miss. 1986):

> By analogy to our familiar test as to when any fact question may be taken from the jury, our rule is this: The refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper, only if the trial court--and this Court on appeal--can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inferences which may be drawn from the evidence in favor of the requesting party, that no hypothetical, reasonable jury could find the facts in accordance with the theory of the requested instruction.

*Id.  See also Church v. Massey*, 697 So.2d 407, 410 (Miss. 1997).

¶18.  The first argument presented by Busick concerns Jury Instructions 20 and 20A.  Instruction 20 states:

> In returning your verdict in this case, you are to consider all of the fact and the instructions of law given to you, and then return your verdict by completing this form.  When a verdict has been reached by nine of the twelve members of the jury, write out you answers to the following questions on this form and notify the bailiff that you have reached your verdict. 1.  Do you find from a preponderance of the evidence that Beverly Busick was guilty of negligence (fault) which was the proximate contributing cause of the accident?

9

2.  If your answer to Question 1 is "yes," please state the percentage of negligence (fault) for Beverly Busick as compared to all of the negligence (fault) which caused her own damages._____percent

3. Do you find from a preponderance of the evidence that Susan St. John was guilty of any negligence (fault) which was a proximate contributing cause to Beverly Busick's damages?

4.  If your answer to Question No. 3 is "yes," please state the percentage of negligence (fault) for Susan St. John as compared to all of the negligence (fault) which caused Beverly Busick's damages._____percent

If you find that either of the drivers are not guilty of any negligence, enter a 0 in the blank for that person.

THE TOTAL PERCENTAGES IN QUESTIONS NUMBERED 2 AND 4 MUST EQUAL  100 percent.

5. What is the total amount of any damages incurred by Beverly Busick as a result of the collision in question? $_____

The jury was told that if Instruction 20 was found confusing, then it could substitute Instruction 20A which

states:

In returning your verdict in this case, you are to consider all of the facts and instructions of law given to you and return your verdict by filling out this form.  When your verdict had been reached, write out your answers to the following questions on this form and notify the Bailiff that you have reached your verdict:

1.  Do you find Susan St. John guilty of any negligence which proximately caused or contributed to the injuries and/or damages of the Plaintiff?

Yes_____ No_____

(If the answer to the above question is "No," stop here and give this Special Verdict Form to the Bailiff.  If your answer is "Yes," proceed to answer question no. 2)

2.  Do you find Beverly Busick guilty of negligence which proximately caused or contributed to the injuries and/ or damages to herself?

Yes_____ No_____

(Proceed to answer question no. 3)

3) List the proportion, or percentage, of negligence which you attribute to Susan St. John and Beverly Busick.

Susan St. John _____%

Beverly Busick_____%

Total           _____%

(These figure must add up to 100%)

(Proceed to question No. 4)

4) What is the total amount of damages that you find by a preponderance of evidence to have been incurred by the Plaintiff as a result of the accident in question? $_____

10

¶19.     St. John argues that Busick is not entitled to a new trial because her own instructions were faulty. Instruction 20 was submitted by Busick over the objection of St. John's counsel that it could cause confusion by requiring the jury to fix a percentage of negligence attributable to Busick before inquiring whether St. John was negligent. St. John finds it important that Busick is to blame for submitting the confusing instruction which Busick argues requires reversal. Further, St. John contends that the jury's question which reflected confusion is not part of the record; therefore, Busick's objection is waived. *Fuselier v. State*, 654 So. 2d 519, 521 (Miss. 1995); *General Motors Corp. v. Pegues*, 738 So. 2d 746, 753 (Miss. Ct. App. 1998). St. John contends that Busick made no objection to the Instruction 20. Moreover, St. John states that, although Busick originally objected to 20A, Busick subsequently offered it. St. John urges that Instruction 20A was implicitly approved by this Court in *Reese v. Summers*, 792 So. 2d 992, 995 (Miss. 2001).

¶20.     St. John also notes that Model Instruction § 11.7, upon which Instruction 20 was based, is poorly drafted, because it allows the jury to determine whether a plaintiff is at fault before deciding whether the defendant is at fault. The burden of proof is on the plaintiff to prove the negligence of the defendant. Until such a determination is made, there is no entitlement to damages. The affirmative burden of a defendant to prove the plaintiff's negligence is irrelevant until the defendant is proven to be at fault. St. John urges that the first question should always be whether the defendant is at fault. That instruction is also said to be problematic as the jury is asked to determine the percentage of negligence of the plaintiff before determining the existence of negligence vel non of the defendant. St. John contends that the jury should not decide the percentage of fault before concluding who, if anyone, is at fault. Finally, the jury is allowed to write down a percentage of fault without being instructed at that point that the percentages must add up to 100%. St.

11

John states that none of this confusion can arise when a jury first determines the defendant's negligence vel non as Instruction 20A requires.

¶21.    St. John cites M.R.E.606(b),  which says:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the juror's attention or whether any outside influence was improperly brought to bear up on any juror.  Nor may his affidavit or evidence about any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

M.R.E. 606(b).  Jurors are generally precluded from testifying about their own verdict.  Rule 606 provides that no "statements" from a juror can be offered to show that a verdict is invalid.  St. John urges that since the jury's writing on Instruction 20 was not the final verdict form, the Court should not allow this to be introduced.

¶22.    The Court has refused to reform a jury verdict even where the jury's actions clearly violated court instructions. *APAC-Miss. Inc. v. Goodman*, 803 So. 2d 1177, 1185-86 (Miss. 2002).  In *Goodman*, a juror was allowed to testify concerning how his fellow jurors decided to figure compensation by averaging each individual juror's figures.  The jury then added 40% for attorney fees to conclude the figure for its verdict.  The Court held that the quotient verdict constitutes reversible error, that the juror's affidavits constituted incompetent evidence where there was no threshold showing of external influences on the jury. The Court affirmed the trial court's denial of a new trial or a remittitur.

¶23.    We have reversed the decision of a trial court that  failed to acknowledge the jury's decision that both parties were equally negligent after a failure  to provide the jury with instructions regarding the format

12

for a comparative negligence verdict. ***Burton ex rel. Bradford v. Barnett***, 615 So.2d 580 (Miss. 1993). Burton and Barnett were involved in an accident in which Burton was injured. Burton sued Barnett. During its deliberations, the jury raised a question and was instructed to put it in writing. *Id.* at 581. The message to the judge read as follows: "We the jury find the Plaintiff, as well as, the Defendant to be equally negligent and feel they should assume their expenses and any other obligations. We recommend this case be dismissed. Your Honor: If we must follow your instruction C-5 We, the Jury, find for the Defendant. We do not wish to. Thank you." *Id.* at 581 After reading the jury's message, the trial court announced that the message was a verdict and reformed the verdict to read: "We, the Jury, find for the Defendant, Shirley A. Barnett." *Id.* At the request of Burton's attorney, a jury poll, resulted in a 12-0 vote by the jurors. *Id.* The circuit court then announced: "It is the verdict of the entire jury. It was a unanimous verdict. I ask that it be entered as, we, the jury, find for the Defendant." *Id.* at 582. Burton asserted that the circuit court erred in finding that the question posed by the jury was a verdict and in failing to acknowledge that the jury found that both parties were equally negligent *Id.* The jury was given Instruction C-5 which instructed the jury to write the verdict on a piece of paper in one of the stated forms. Id. The first form said, "[i]f you find for the Plaintiff, 'We, the Jury, find for the Plaintiff, _____, and assess _____ damages at $_____.'" The second choice for the jury was, "[i]f you find for the Defendant, 'We, the jury, find for the Defendant. *Id.*

¶24.    This Court found that it was clear that the instruction "provides no alternative form for the rendering of a comparative negligence verdict. *Id.* The Court explained that in giving a comparative negligence instruction, along with the form of the verdict given to the jury, the following language could also be

13

included: "If you find both parties negligent, the form of your verdict may be: We, the jury, find plaintiff and defendant negligent and that plaintiff is responsible for _____% of the damages. We find plaintiff's damages to be $_____." *Id.* at 582-83. Although the application of the law of comparative negligence was presented in another instruction, the jury had no separate instruction defining comparative negligence. *Id.* The jury also lacked clarification in Instruction C-5 of the basic premise that the plaintiff's negligence is not a bar to recovery nor was there any format for apportionment of damages. *Id.* There was not adequate response in the reformation of the verdict finding for defendant without mention of damages. *Id.* The trial court was unresponsive to the jury's request for further instructions. *Id.* Further, the court failed to address the jury's decision that both parties were equally negligent. *Id.* We were not able to conclude that the verdict rendered was fairly reached because the trial court did not address the "manifest confusion of the jury." *Id.* (citing *Harrison v. Smith*, 379 So.2d 517, 518-19 (Miss. 1980) (error for judge to reform verdict in favor of defendant instead of requiring jury to clarify verdict, which despite comparative negligence instruction found "both plaintiff and defendant negligent to a degree with no damages assessed.") Reversing the trial court's decision and remanding the case for a new trial, we held that "the jury must be fairly and properly instructed in the applicable rules of law." *Id.*

¶25.     An appellant cannot complain on appeal of alleged errors which he invited or induced. *Caston v. State*, 823 So. 2d 473, 502 (Miss. 2002) "[T]he appellant cannot complain because of error in its own instruction." *State Highway Comm'n v. Randle*, 180 Miss. 834, 179 So. 273 (1938); *Yazoo v. M.V.R. Co. v. Wade*, 162 Miss. 699, 139 So. 403, 404 (1932).

14

¶26. The trial court did not err in submitting Instructions 20 and 20A to the jury. As stated earlier, this Court has refused to reform a jury verdict even where the jury's actions clearly violated court instructions. *Goodman*, 803 So. 2d at 1185-86. First, Busick offered the instructions. See *Caston* 823 So. 2d at 502. As the appellant, Busick cannot complain of because of error in her own instruction. See *Randle*, 179 So. at 273; *Wade*, 139 So. at 404. Unlike *Burton,* 615 So.2d 580, where we held that the trial court was unresponsive to the jury's questions, this trial court recognized the potential confusion by the jury and further instructed the jury with Jury Instruction Number 20A. Simply because the jury asked a question about the possibility of finding neither driver liable for the collision does not require that the trial court should have refused the verdict rendered by the jury based on Instruction 20A. On Instruction 20A (as well as Instruction 20), unlike *Burton*, 615 So.2d at 583, the jury was informed that the apportionment of fault must equal 100% when added together. This jury was provided with an opportunity to assess fault based on principles of comparative negligence, even though neither party pled or argued such a defense. This situation is more analogous to *Harrison*, 379 So.2d at 518-19, where we held that it was error for the trial judge to reform a verdict in favor of defendant instead of requiring jury to clarify verdict, which despite comparative negligence instruction found "both plaintiff and defendant negligent to a degree with no damages assessed." As in *Goodman*, 803 So. 2d at 1185-86, the jury's question should not be taken as testimony or evidence of the processes or methods in which the jury came to its decision. There was no allegation of any impropriety or improper prejudicial influence in the decision of the jury.

¶27. Busick contends that the trial court erred in granting a such large number of instructions in a case involving a simple two-vehicle collision resulting in the jury's inability to apply the law to the facts and enter

a verdict on the merits. Specifically, she lists the Instructions 5, 6A, 9, 12, 13 and 17 Because these instructions were argumentative, Busick claims she was unfairly disadvantaged because the jury was overly indoctrinated and instructed on the rights that St. John *did not have* and on obligations and duties *not required of her.*

¶28.     St. John urges that since jury instructions are considered as a whole, this Court does not consider any particular instruction in isolation. Instead, there can be no reversible error concerning a defect in a particular instruction; instead, the review of all instructions as a whole must reveal that the jury has been reasonably instructed on the law. Of the six instructions complained of, St. John offered only four. Of those four, Instruction 6 deals with foreseeability and hindsight; Instructions 9 and 12 deal with negligence and the proper verdict if finding Busick the sole proximate cause of the collision; and Instruction 17 deals with limitation of damages to those sustained during the accident. St. John argues that there was sufficient evidence of this since Busick admitted a high rate of speed and failure to avoid St. John when her car was visible 300 feet away. She states that she had "the right to embody [her] theories of the case in the jury instructions provided there is testimony to support it" and "made conditional upon the jury's finding that such facts existed." ***Murphy v. Burney***, 27 So. 2d 773, 774 (Miss. 1946).

¶29.     Jury Instruction 5, which was requested by Busick, states:

> As an element, or test, of proximate cause is that an ordinarily prudent person should reasonably have foreseen that some injury might probably occur as a result of his or her negligence. It is not necessary to foresee the particular injury, the particular manner of the injury or the extent of the injury.

¶30.     Jury Instruction no. 6, requested by St. John, states:

> In determining whether or not a person is negligent, you must consider the circumstances that were present for him or her at that time, and the actions taken at the time. Even

16

though we now have the benefit of hindsight about the accident in question, when you are determining whether or not a person is negligent, you cannot properly impose the hindsight on that party, but you are required to consider whether or not a person acted reasonably under the facts and circumstances that were present at the time.

¶31.    Jury Instruction 6A, requested by Busick, states:

an element, or test, of proximate cause is that an ordinarily prudent person should reasonably foresee that some injury might probably occur as a result of the negligent acts in nor taking proper or reasonable precautions upon entering an intersection.  It is not necessary to foresee the particular injury, the particular manner of the injury or the extent of the injury.

¶32.    Jury Instruction 9, requested by St. John,  states:

The Court instructs the jury that a person operating a vehicle must keep a reasonable lookout for other traffic and keep her vehicle under reasonable control to avoid contact with other vehicles on the roadway.  In the case before you today, if you find the Plaintiff Beverly Busick, failed to maintain a reasonable lookout or to keep reasonable control of the vehicle she was operating so as to avoid contact with other vehicles on the roadway, then it is your sworn duty to find Beverly Busick negligent.

¶33.    Jury Instruction 12, requested by St. John,  states:

The Court instructs the jury that a person driving a vehicle is under a duty to keep a reasonable and proper lookout for other vehicles using the roadway and to keep the vehicle they are driving under reasonable control.  If you find by a preponderance of the evidence that Beverly Busick failed to keep a reasonable and proper lookout for other vehicles using the roadway or failed to keep her vehicle under reasonable control then she was guilty of negligence.  If you find that this negligence, if any, was the sole proximate cause of the collision, then you must return a verdict in favor of the defendant, Susan St. John.

¶34.     As further explanation of her objection to the instructions, Busick argues that  Instructions 9 and 12 were improper for submission to the jury since there had been no allegations that Busick failed  to keep a proper look out or failed to maintain control of her vehicle.

¶35.    Instruction No. 13 states:

The Court instructs the jury that under the circumstances of the case that the Plaintiff was operating her vehicle on a main or through roadway and that she had the right-of-way to proceed onto Highway 80 southbound. The Defendant was traveling east on a side road to the roadway being traveled by the Plaintiff. Since the Plaintiff had the right of way, the Defendant was obligated to stop and enter the roadway at a time when she had a reasonable opportunity to so. If you find from a preponderance of the evidence that she entered the Plaintiff's roadway without having a reasonable opportunity to do so, causing the collision, then you will find for the Plaintiff.

¶36. Instruction No.13 is important because Busick argues the jury's verdict ignored the instruction when failing to find St. John negligent. Busick argues that because she was traveling on a through way with the right-of-way to continue toward Highway 80 when St. John failed to yield the right-of-way, then she was guilty of negligence. Busick argues the Court granted Instruction No. 13 because Busick was traveling on a through way within a parking lot and had the right-of-way to continue toward highway and that if St. John failed to yield the right of way, then she was guilty of negligence. Busick submits that this instruction was ignored, and the jury's verdict disregarded her right to continue traveling on the through way.

¶37. St. John argues that there was ample evidence to determine that St. John did not enter the roadway when it was unreasonable to do so. St. John testified that she could not see to her left because of the bushes and inched forward in her car before stopping again. St. John contends that the jury found that she stopped without proceeding after seeing Busick's vehicle so that Busick cannot complain the jury did not find in her favor.

¶38. We find that the issue of whether St. John stopped without proceeding was properly an issue of fact for the jury to determine. Busick's contention that the rules of the road were in place rests solely on her own assertion that she was not in the parking lot and had the right-of-way while traveling on a through

18

way. This fact was disputed. The jury refused to recognize Busick's theory. In addition, the jury could

properly decide that St. John did not fail to stop when it was reasonable to do so since there was evidence

that her view was obstructed by the shrubbery.

¶39.     As in *Fielder v. Magnolia Beverage Co.*, 757 So.2d 925, 936 (Miss. 1999), Busick's

objections to Instruction numbers 9 and 12 likely refers to those cases where this Court has condemned

instructions which require vigilance by a driver as requiring more than the exercise of reasonable care by

a motorist. See *Turner v. Turner*, 524 So.2d 942, 947 (Miss. 1988) (holding an instruction erroneous

because it placed a higher burden on the driver, Turner, than that of reasonable care); *Crossley v. James*,

365 So.2d 957 (Miss. 1978) (holding that it was reversible error to grant an instruction which places upon

defendant the burden of avoiding a collision); *Jones v. Phillips*, 263 So.2d 759, 762-63 (Miss. 1972)

("avoid the collision" and "vigilant lookout" instructions were erroneous, because both instructions,

considered together, placed a higher duty upon defendant than the law requires). *But see Miles v.*

*Duckworth*, 481 So.2d 757, 758 (Miss. 1985) (upheld an instruction that stated that if defendant "failed

to keep a reasonable and proper lookout for other traffic and vehicles; or if he failed to have his vehicle

under reasonable and proper control .... then such action or actions, if any, ... constitutes negligence").

However, in *Fielder*, we agreed that no such burden or duty was placed on the driver by a similar

instruction based on an almost identical instruction approved in *Church v. Massey*, 697 So.2d at 412.

There, the similar instruction read:

> You are instructed that it was the duty of the Plaintiff, Gary W. Church to drive his
> motorcycle at a reasonable rate of speed under the circumstances then confronting him. It
> was also his duty to keep a reasonable lookout to the front and sides of his moving

19

motorcycle to keep it under reasonable and easy control and anticipate and expect the presence of other vehicles which were also using 8th Street at the same time.

*Fielder*, 757 So. 2d at 935 (citing *Church*, 697 So. 2d at 412). In both *Fielder*, and *Church*, we approved that instruction. *Id.*

¶40. In *Greyhound Lines, Inc. v. Sutton*, 765 So.2d 1269, 1274 (Miss.2000), we agreed that the bus driver had both the duty to slow down as he approached the intersection and a duty to brake when and if it became evident May was not going to stop for the intersection. We agreed that the chancellor applied the correct legal standards. We based that decision on *Jobron v. Whatley*, 250 Miss. 792, 168 So.2d 279, 284 (1964), where this Court delineated the proper standard:

> Insofar as the appellee's having the right of way, or the right to assume that the driver of the other car would stop his car before entering the intersection, is concerned, this Court has repeatedly stated what the rule is, namely: That the motorist's right to assume that the driver of a vehicle proceeding toward an intersection will obey the law of the road, which requires him to stop before entering the intersection, exists only until he knows or in the exercise of ordinary care should know otherwise.

*Id. Jobron* involved a car with the right-of-way hit by a car which ran a stop sign. *Sutton*, 765 So. 2d at 1272 (citing *Jobron*, 168 So. 2d at 280). A passenger in the car that was hit filed suit against both the driver who ran the stop sign and the driver of the car she was in for failing to keep a proper look out and failing to properly control the car after seeing the other car approaching. *Id.* at 1273. Based on the evidence presented, this Court held "[c]ertainly it would be a question for the jury to determine, whether or not the appellee was guilty of negligence in failing to use her brakes and slow her vehicle down so that, when it appeared Dr. White was not going to obey the stop sign and bring his vehicle to a stop, she would have had her vehicle under control and would have been able to avoid the collision." *Id.* In *Sutton*,

20

substantial credible evidence supported the chancellor's finding that the driver breached his duty to slow down. *Id.* First, the driver himself testified he did not start to brake until after impact. *Id.* The driver testified that he was speeding and there was no sign warning the driver of the intersection; however, this did not relieve him of his duty to slow down at that point a reasonable person would know he was approaching an intersection. *Id.* At that moment, the driver should be slowing down and keeping a proper look out for the approaching car. *Id*. There was substantial credible evidence to support the chancellor's findings that the driver was not keeping a proper look out. *Id.* Under *Jobron*, a driver has no duty to take defensive action until such time as a reasonable person would know a car approaching an intersection will not stop. *Id.* Bryant, the bus driver, testified that he never even saw May's vehicle until impact. *Id.* Since the driver failed to see May's vehicle, and therefore, could not have possibly known it would not stop, the driver breached his duty to keep a proper look out. *Id.*

¶41.    The Court finds that Busick's assignment of error is without merit. There was evidence to indicate that Busick indeed failed to keep a proper look out and maintain control over her vehicle. There was testimony that indicated that she did not see St. John's car until the moment before the collision. Further, there was evidence that Busick was going approximately 35 mph in a parking lot. A reasonable person would recognize the need to slow her vehicle upon approaching an intersection in a busy grocery store parking lot. Busick is expected to maintain control over her speed and be aware of and expect to meet other vehicles in front of or approaching the sides of her vehicle in the grocery store parking lot and in the vicinity of the parking lot.

21

¶42. Also disputed is Instruction 17 which details "reasonable compensation for the injuries actually sustained, if any, by the Plaintiff, as a result of the accident in question." Busick argues that since there was uncontradicted evidence that the injury occurred as a result of the accident the instruction was improper, the jury's task was to determine the extent of the injury and loss not whether the injury existed at the time of the accident.

¶43. St. John contends that Instruction 17 is appropriate on limitation of damages since the medical evidence showed that the damages or medical bills were either nonexistent, overstated or resulted from carpal tunnel syndrome. St. John disputes that she conceded liability or damages; she maintains that she vigorously contested both with the jury finding favor with her version of the accident.

¶44. Jury Instruction 17, requested by St. John, states:

> The Court instructs the jury that should you find for the Plaintiff in this case, you are not authorized to find for the Plaintiff for any amount beyond reasonable compensation for the injury sustained, if any. You are not authorized to award any damages for attorneys' fees, nor should you consider as evidence any estimates of damages made by the Plaintiff's attorneys. But you must, if you find for the Plaintiff, confine your verdict to reasonable compensation for the injuries actually sustained, if any, by the Plaintiff, as a result of the accident in question. You are further instructed that should you find for the Plaintiff, then the Court instructs you that the Defendant is not responsible for any physical or mental condition that the Plaintiff might have had after the accident but was not caused by the accident in question.

¶45. Busick cites *McCary v. Caperton*, 601 So.2d 866 (Miss. 1992), in support of her position that the trial court erred in accepting this instruction containing the "if any" language. McCary was involved in an accident with Caperton. *Id*. at 867. The court directed a verdict in favor of the plaintiff on the issue of negligence, but the issue of damages went to the jury. *Id*. After deliberation, the jury found for the defendant. *Id.* We expressly stated that " we do not hold that the 'if any' language would be improper

22

in all cases." *Id.* at 870. However, in that case, the record contained unrefuted evidence that the plaintiff was injured in the accident and that the injury resulted in loss. *Id*. The sole task of the jury was to determine the extent of McCary's injuries and loss, not whether any existed. *Id.* (citing *Burrell v. Goss*, 245 Miss. 420, 424, 146 So.2d 78, 79 (1962) ("according to all of the evidence, the plaintiff sustained at least some injury"). *Id.* Because of the undisputed evidence of damages, we held that the trial court erred in granting an instruction which would allow the jury to find a total absence of injury or loss. *Id.*

¶46. Busick's reliance on *McCary*, 601 So.2d at 870, is misplaced as this Court stated that " we do not hold that the 'if any' language would be improper in all cases." The jury heard substantial evidence which indicated Busick was not injured or did not sustain the lasting injuries which she claimed resulted from the collision. The evidence here was not "unrefuted" as in *McCary*. The Court agrees with St. John that she had "the right to embody [her] theories of the case in the jury instructions provided there is testimony to support it" and "made conditional upon the jury's finding that such facts existed." *Murphy v. Burney,* 27 So. 2d at 774. We find no reversible error in the jury instructions.

## IV.  WHETHER THE TRIAL COURT ERRED BY EXCLUDING THE TESTIMONY OF THREE WITNESSES CALLED BY BUSICK.

¶47. "[A]dmission or suppression of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion." *Church of God Pentecostal, Inc. v. Freewill Pentecostal Church of God, Inc.*, 716 So.2d 200, 210 (Miss. 1998). For a case to be reversed on the erroneous admission or exclusion of evidence, the error must result in prejudice and harm or adversely affect a substantial right of a party. *Terrain Enters., Inc. v. Mockbee*, 654 So.2d at 1131; *Hansen v. State*, 592 So.2d 114 (Miss. 1991).

23

¶48. The trial court has wide and considerable discretion in matters relating to discovery; its order will not be disturbed unless there has been an abuse of discretion. *McCarty v. Kellum*, 667 So.2d 1277, 1285 (Miss. 1995); *Clark v. Miss. Power Co.*, 372 So.2d 1077, 1080 (Miss. 1979). We will affirm unless there is a definite and firm conviction that the court below clearly erred in reaching its conclusion after weighing the relevant factors. *Kinard v. Morgan*, 679 So.2d 623, 625 (Miss. 1996).

¶49. This Court reviews the record to determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. *McMillan v. Rodriguez*, 823 So.2d 1173, 1177 (Miss. 2002). Therefore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice occurs. *Id.*

¶50. Busick argues that it was error for the court to exclude the testimony of three witnesses whom she claims were identified in her March 29, 2002, supplemental discovery response and where she claims to have made four offers to St. John to produce the witnesses for depositions. Those three witnesses were her husband, mother, and daughter. Busick claims that their testimony would have established material facts which were otherwise absent from Busick's evidence as verification of injuries which were possibly overlooked by the jury as a result of the refusal.

¶51. The parties had an agreed order that set the trial for September 24, 2001 with agreement for completion of discovery on September 14, 2001. Busick made a motion for continuance to obtain medical treatment and for the deposition of her doctor. In a joint motion filed by both parties, the trial was reset for April 15, 2002, and discovery would be completed 60 days before trial, on or about February 14,

2002. St. John submits that on March 29, 2002, Busick supplemented with an unverified interrogatory response identifying her husband, Robert Busick, as an additional fact witness. St. John immediately filed a motion in limine to strike his testimony as the witness was disclosed only 17 days before trial. On the morning of the trial, during voir dire, Busick disclosed two more witnesses, Shirley Doeker and Christy Trotter Thompson. Again, St. John moved to exclude their testimony. When the judge asked the subject of the witnesses' testimony, Busick stated that their testimony would be to damages sustained as a result of the accident. Relying on Busick's assertion of the relevance as to damages, the court refused to allow the testimony because of untimely disclosure and because Busick would not suffer prejudice from the refusal. The court found that Busick would testify as to the damages and additional evidence would be cumulative.

¶52.    St. John contends that Busick has not demonstrated error because the testimony of the witnesses would have been cumulative. Further, St. John urges that it is unbelievable that Busick did not know that her mother, husband and daughter did not have discoverable knowledge until 17 days before trial. St. John argues that Busick was allowed to testify to her injuries, introduce medical evidence and present the deposition testimony from her doctors. More importantly, St. John argues that, since the jury returned a verdict on the issue of St. John's lack of negligence and not damages, there was no prejudice from the refusal to allow the testimony.

¶53.    Rule 401 of the Mississippi Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Furthermore, Rule 403 of the Mississippi Rules of Evidence reads, "Although relevant, evidence may be excluded if its probative value is substantially

25

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶54. We hold that the trial court did not abuse its discretion in excluding the testimony of the witnesses. After a review of the record, the trial court employed the proper legal standards in its fact findings governing evidence admissibility. Reversal is not appropriate, as M.R.E. 401 and 403 were properly used by the trial court to determine that the evidence was both not relevant and cumulative.

¶55. Busick requested permission to allow the testimony of her husband only 17 days prior to trial. Even more violative of the rules, her mother and daughter were offered as witnesses the day of the trial. We have long held that "the rules of discovery are to prevent trial by ambush." *Choctaw Maid Farms, Inc. v. Hailey*, 822 So.2d 911, 917 (Miss. 2002); *Motorola Comm. & Elecs., Inc. v. Wilkerson*, 555 So. 2d 713, 718 (Miss. 1989). Further, trial courts "are committed to the discovery rules because they promote fair trials. Once an opponent requests discoverable material, an attorney has a duty to comply with the request regardless of the advantage a surprise may bring." *Williams v. Dixie Elec. Power Ass'n*, 514 So. 2d 332, 335 (Miss. 1987).

¶56. The trial court did not err when refusing to allow Busick's mother, husband and daughter to testify to damages. Busick was both deposed and testified as to her injuries. There was surely no knowledge that these witnesses possessed about Busick's damages that Busick did not know personally. Additionally, Busick presented evidence from two doctors who testified as to her injuries she allegedly sustained in the collision. Further, and more pertinent on the issue of having found St. John not liable for negligence, the

26

jury never reached the question of damages about which Busick wished to present through this evidence. There is no merit to this issue.

### V. WHETHER THE COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR A DIRECTED VERDICT WHICH WAS MADE AT THE END OF THE EVIDENCE PRESENTED BY BOTH PARTIES.

¶57. This Court's standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are identical:

> Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

*Miss. Power & Light Co. v. Cook*, 832 So.2d 474, 478 (Miss. 2002); *Illinois Cent. R.R. Co. v. Hawkins*, 830 So.2d 1162, 1169 (Miss. 2002); *Alpha Gulf Coast, Inc. v. Jackson*, 801 So.2d 709, 720 (Miss. 2001). Generally, a case should not be removed from a jury's consideration if from the facts favorable to the party adversely affected taken together with all reasonable inferences therefrom, it can be said that a rational jury could find in his favor. *Hawkins*, 830 So.2d at 1169).

¶58. Busick argues that the trial court erred in denying her motion for a directed verdict which was made at the end of the evidence presented by both parties. As Busick alleges, the undisputed physical facts of the collision, disregarding the testimony of both drivers clearly showed that Busick was traveling on a thorough fare within a parking lot for a distance of 300 feet. At the same time, Busick contends that St. John entered the main or thorough fare at a "T" intersection from a side drive and the collision occurred

27

in Busick's lane of travel. Busick claims the obvious conclusion should result in a directed verdict in her favor less any reduction for her contributory negligence, if any. Busick argues that it is factually and physically impossible for her to be 100% at fault in the collision.

¶59. St. John counters that based on the apparent reliance on the substantive jury instructions submitted by Busick, her argument is based on a false premise that the statutory rules of the road contained in Title 63, Ch. 3 of Miss. Code Ann. apply in this case. From her use of the terms "street" and "road," St. John interprets Busick's reliance on Miss Code Ann. § 63-3-125 as misguided. St. John submits that Busick relies on these rules in her attempt to call attention to the standards in Miss. Code Ann. § 63-3-807 for which Busick improperly urges that Busick had the right-of-way at the time of the accident, resulting in the court finding St. John liable as a matter law. However, St. John argues that Busick's reliance on these "rules of the road" is improper because those rules are not applicable to an accident which occurred in a private parking lot. *Stewart v. Davis,* 571 So. 2d 926, 931 (Miss. 1990); *Vaughan v. Lewis*, 236 Miss. 792, 790, 112 So. 2d 247, 249 (1959) (holding that "statutes obviously have no legal application, as such, so far as the regulation of traffic on private property is concerned.")

¶60. St. John contends that the issues should be decided under the principles of common law negligence. She cites *Carlisle v. Cobb Bros. Construction Co.*, 238 Miss. 681, 685, 119 So. 2d 918, 920 (1960), in support of this position. We agree. In *Carlisle*, this Court held that "the sum and substance submitted to the jury that questions, related to sole proximate cause, of whether the Appellant kept a proper lookout and his car under control; whether he entered the intersection...at a time when Defendant's truck was approaching... it so closely as to constitute an immediate hazard were not erroneous." *Id.* St.

28

John further quotes: "[t]hese were issues of fact. As was stated in ***Vaughan v. Lewis***, these instructions enunciated principles and negligence under the common law." ***Carlisle,*** 238 Miss. at 686, 119 So. 2d at 920. St. John submits that the law on which the jury was instructed in Instructions Number 9, 10 and 12 are the equivalent of the instructions approved in ***Carlisle***.

¶61. Busick's contention that she was traveling on a throughway is not undisputed so that the court should have directed a verdict in her favor by finding that St. John should have yielded the right-of-way. There is evidence that, even if the trial court accepted this theory, St. John did not merely fail to stop. Instead, the evidence indicates that a reasonable juror could easily conclude that St. John's view was obstructed the first time she stopped at the intersection so that she chose to creep up to get a better look at oncoming traffic and stopped again. Further, it is not factually impossible for a reasonable juror to have believed that Busick failed to maintain a proper look out and reasonable control of her vehicle. She was traveling in a parking lot, where a reasonable juror could easily conclude that a reasonable person should maintain a speed of no more than 5 to 10 mph instead of the 35 m.p.h. which Busick admitted to traveling. Additionally, a reasonable juror could easily conclude that a driver should anticipate and expect other vehicles to approach from either the front or the side within a parking lot. Finally, a reasonable driver could be easily expected to slow his vehicle when approaching an intersection, especially one with a large parking lot where other cars are expected to be in motion at practically all times. This issue is without merit.

## CONCLUSION

¶62. For these reasons, we affirm the judgment of the trial court.

¶63. **AFFIRMED.**

29

**PITTMAN, C.J., EASLEY AND CARLSON, JJ., CONCUR. COBB, J., CONCURS IN PART AND IN RESULT. McRAE, P.J., AND GRAVES, J., CONCUR IN RESULT ONLY. WALLER AND DIAZ, JJ., NOT PARTICIPATING.**